United States Bankruptcy Court
Southern District of Texas
**ENTERED**
July 28, 2023
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTER FOR AUTISM AND RELATED | ) | Case No. 23-90709 (DRJ) |
| DISORDERS, LLC, *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 243** |

---

### ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT
### AND CONFIRMING THE JOINT CHAPTER 11 PLAN OF CENTER FOR
### AUTISM AND RELATED DISORDERS, LLC AND ITS DEBTOR AFFILIATES

---

The above-captioned debtors (collectively, the "Debtors") having:

a.   commenced, on June 11, 2023 (the "Petition Date"), these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

b.   Filed,[2] on or immediately after the Petition Date:

  (i)   the *Joint Chapter 11 Plan of Center for Autism and Related Disorders, LLC and Its Debtor Affiliates* [Docket No. 16] (as modified, amended, or supplemented from time to time, the "Plan") attached hereto as **Exhibit A**,

  (ii)   the *Disclosure Statement for the Joint Chapter 11 Plan of Center for Autism and Related Disorders, LLC and Its Debtor Affiliates* [Docket No. 17] (as modified, amended, or supplemented from time to time, the "Disclosure Statement");[3]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Center for Autism and Related Disorders, LLC (1512); CARD Holdings, LLC (1453); CARD Intermediate Holdings I, LLC (N/A); CARD Intermediate Holdings II, LLC (3953); and SKILLS Global, LLC (4192).  The location of the Debtors' principal place of business is 9089 S Pecos Rd., Suite 3600, Henderson, Nevada 89074.

[2]   Unless otherwise indicated, use of the term "Filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

[3]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (as defined herein), as applicable.  The rules of interpretation set forth in Article I.B of the Plan apply.

KE 98754807

(iii)     the *Debtors' <u>Emergency</u> Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures with Respect to Confirmation of the Debtors' Proposed Chapter 11 Plan, (III) Approving the Forms of Ballot and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Extending the Time by Which the Debtors File Schedules and Sofas, and (VI) Granting Related Relief* [Docket No. 18] (the "<u>Disclosure Statement Motion</u>");

(iv)     the *Declaration of Steven Shenker, Chief Restructuring Officer of CARD Holdings, LLC, in Support of Chapter 11 Petitions, First Day Motions, and DIP Motion* [Docket No. 21] (the "<u>First Day Declaration</u>"), detailing the facts and circumstances of these Chapter 11 Cases;

(v)     the *Debtors' <u>Emergency</u> Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, (VI) Authorizing the Debtors to Enter into Definitive Purchase Agreements, and (VII) Granting Related Relief* [Docket No. 69] (the "<u>Bidding Procedures Motion</u>");

c.     obtained, on June 12, 2023, the entry of the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures with Respect to Confirmation of the Debtors' Proposed Chapter 11 Plan, (III) Approving the Forms of Ballot and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Extending the Time by Which the Debtors File Schedules and Sofas, and (VI) Granting Related Relief* [Docket No. 85] (the "<u>Scheduling Order</u>") approving the Disclosure Statement, solicitation procedures (the "<u>Solicitation Procedures</u>"), and related notices, forms, and ballots (collectively, the "<u>Solicitation Packages</u>");

d.     caused, on or about June 15, 2023, the Solicitation Packages and *Notice of Hearing to Consider (I) the Adequacy of the Disclosure Statement and Confirmation of the Joint Chapter 11 Plan Filed by the Debtors and (II) Related Voting and Objection Procedures* (the "<u>Combined Hearing Notice</u>") and the deadline for objecting to confirmation of the Plan ("<u>Confirmation</u>") to be distributed in accordance with the terms of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>"), the Scheduling Order, and the Solicitation Procedures, *see Certificate of Service* [Docket No. 146];

e.     caused, on or about June 15, 2023, the *Notice of Non-Voting Status and Opt Out of Releases to Holders of Impaired Claims or Interests Conclusively Presumed to Accept the Plan* and the *Notice of Non-Voting Status and Opt Out of Releases to*

*Holders of Impaired Claims or Interests Conclusively Deemed to Reject the Plan* (together, the "Non-Voting Status Notice and Opt Out Forms" and, together with the Combined Hearing Notice, the "Notices") to be served on all Holders of Claims or potential Claims (other than Intercompany Claims) and Holders of Interests (other than Intercompany Interests) in the Non-Voting Classes, which informed recipients of (i) their status as holders or potential holders of Claims or Interests in non-voting classes, (ii) provided the full text of the release, exculpation, and injunction provisions set forth in the Plan, (iii) included a form by which holders could elect to opt out of the Third-Party Release by checking a prominently featured and clearly labeled box, and (iv) enclosed a postage prepaid, return-addressed envelope in which holders could return their opt out elections to the Claims and Noticing Agent, *see Certificate of Service* [Docket No. 146];

f.      obtained, on June 16, 2023, the *Order (I) Approving the Bidding Procedures, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, (VI) Authorizing the Debtors to Enter into Definitive Purchase Agreements, and (VII) Granting Related Relief* [Docket No. 134] (the "Bidding Procedures Order"), approving the Bidding Procedures [Docket No. 134, Ex. 1] (the "Bidding Procedures"), attached as Exhibit 1 to the Bidding Procedures Order;

g.      published, on June 19, 2023, the Combined Hearing Notice in *The New York Times* (U.S. national edition) and the *Financial Times* (global edition), as evidenced by the *Affidavit of Publication* [Docket Nos. 144, 145];

h.      Filed, on June 22, 2023, the *Certificate of Service* [Docket No. 146], certifying the service of the Solicitation Packages (together with all the exhibits thereto, the "Solicitation Materials Affidavit");

i.      caused, on or about June 23, 2023 and June 28, 2023, the *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 152] to be served via email and overnight mail upon certain parties as evidenced by, among other things, the *Certificate of Service* [Docket No. 154]**.**

j.      Filed, on June 29, 2023, the *Plan Supplement for the Debtors' Joint Chapter 11 Plan* [Docket No. 155] (as modified, amended, or supplemented from time to time, including, without limitation, by the First Amended Plan Supplement (defined below) the "Plan Supplement" and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

k.      Filed, on July 13, 2023, the *First Amended Plan Supplement for the Debtors' Joint Chapter 11 Plan* [Docket No. 208];

l.      held, on July 17, 2023 to July 21, 2023, the Auction;

m.      Filed, on July 18, 2023, the *Declaration of Angela Tsai on Behalf of Stretto Regarding Solicitation and Tabulation of Votes on the Joint Chapter 11 Plan of*

*Center for Autism and Related Disorders, LLC and Its Debtor Affiliates* [Docket No. 223], which accounts for ballots received up to the Voting Deadline (the "Voting Report");

n.    Filed, on July 21, 2023, the Notice of Successful Bidder and Backup Bidder [Docket No. 235];

o.    Filed, on July 24, 2023, the *First Amended Joint Chapter 11 Plan of Center for Autism and Related Disorders, LLC and Its Debtor Affiliates* [Docket No. 243] (the "First Amended Plan");

p.    Filed, on July 24, 2023, the *Declaration of Neal P. Goldman, Disinterested Director of Card Holdings, LLC, in Support of Joint Chapter 11 Plan of Reorganization of Center for Autism and Related Disorders, LLC and Its Debtor Affiliates* [Docket No. 244] (the "Goldman Declaration");

q.    Filed, on July 24, 2023, the *Declaration of Steven Shenker, Chief Restructuring Officer of CARD Holdings, LLC, in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of the Joint Chapter 11 Plan of Center for Autism and Related Disorders, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 245] (the "Shenker Declaration");

r.    Filed, on July 25, 2023, the *Debtors' Memorandum of Law in Support of an Order Approving the Debtors' Disclosure Statement and Confirming the Joint Chapter 11 Plan of Center for Autism and Related Disorders, LLC and Its Debtor Affiliates* [Docket No. 252] (the "Confirmation Brief");

s.    Filed, on July 25, 2023, the *Amended Declaration of Joseph Greenwood in Support of (I) the Debtors' Emergency Motion for Entry of a Sale Order and (II) Confirmation of the Joint Chapter 11 Plan of Center for Autism and Related Disorders, LLC and Its Debtor Affiliates]* [Docket No. 253] (the "Greenwood Declaration"); and

t.    operated their businesses and managed their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court having:

u.    entered the Scheduling Order on July 12, 2023;

v.    entered the Bidding Procedures Order on June 16, 2023;

w.    set July 26, 2023, at 3:00 p.m. (prevailing Central Time), as the date and time for the Combined Hearing, pursuant to sections 1125, 1126, 1128, and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018;

x. reviewed the Plan, the Disclosure Statement, the Disclosure Statement Motion, the Plan Supplement, the Confirmation Brief, the Voting Report, the Combined Hearing Notice, the Solicitation Affidavits, and all Filed pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and confirmation of the Plan, including all objections, statements, and reservations of rights;

y. considered the sale transactions incorporated and described in the Plan;

z. held the Combined Hearing;

aa. heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation;

bb. considered all oral representations, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation; and

cc. taken judicial notice of all pleadings and other documents Filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement, the Asset Sale, and Confirmation having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents Filed in support of approval of the Disclosure Statement, the Asset Sale, and Confirmation and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.  Findings and Conclusions.**

1. The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the

extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

**C.      Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases.**

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of the Debtors' Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 46], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.  No statutory committee of unsecured creditors or equity security holders has been appointed pursuant to section 1102 of the Bankruptcy Code in these Chapter 11 Cases.

E.      **Modifications to the Plan.**

5.      Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan described or set forth in this Confirmation Order or as set forth in the First Amended Plan (collectively, the "Plan Modifications") constitute technical or clarifying changes, changes with respect to particular Claims by agreement with holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan.  These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Accordingly, the Plan is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

F.      **Burden of Proof—Confirmation of the Plan.**

6.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

G.      **Notice.**

7.      As evidenced by the Solicitation Materials Affidavit and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the commencement of these Chapter 11 Cases, the Disclosure Statement, the Asset Sale, the Plan, the Combined Hearing, and the

opportunity to opt out of the Third-Party Release, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan, to the full creditor matrix and the Core/2002 list, including the Debtors' prepetition credit facility lender and DIP Agent and the Debtors' majority prepetition equityholder.  Further, the Combined Hearing Notice was published in *The New York Times* (U.S. national edition) and the *Financial Times* (global edition) on June 19, 2023, in compliance with Bankruptcy Rule 2002(*I*).  Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Scheduling Order. No other or further notice is or shall be required.

### H. Disclosure Statement.

8.     The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

### I. Ballots.

9.     Class 3 Credit Facility Claims are entitled under the Plan to vote to accept or reject the Plan (the "Voting Class").

10.     The form of ballot attached to the Solicitation Affidavit as Exhibit J (the "Ballot") that the Debtors used to solicit votes to accept or reject the Plan from holders in the Voting Class adequately addressed the particular needs of these Chapter 11 Cases and was appropriate for holders in the Voting Class to vote to accept or reject the Plan.

**J.      Solicitation.**

11.      As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation Procedures set forth in Article IX of the Disclosure Statement, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

12.      As described in the Voting Report and the Solicitation Materials Affidavit, as applicable, prior to the commencement of these chapter 11 cases, the Solicitation Packages, including the Plan, the Disclosure Statement, the Combined Hearing Notice, and the Ballots were transmitted and served, including to all holders in the Voting Class, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, the Scheduling Order, and any applicable nonbankruptcy law.  Transmission and service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases.  No further notice is required.

13.      As set forth in the Voting Report, the Solicitation Packages were distributed to holders in the Voting Class that held a Claim as of June 11, 2023 (the "Voting Record Date").  The establishment and notice of the Voting Record Date were reasonable and sufficient.

14.      The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for each holder in the Voting Class to make an informed decision to accept or reject the Plan.

15.      Under section 1126(f) of the Bankruptcy Code, holders of Claims in Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) (collectively, the "Unimpaired

Classes") are Unimpaired and conclusively presumed to have accepted the Plan. The Debtors were not required to solicit votes from the holders of Claims and Interests in Class 4 (General Unsecured Claims), Class 7 (Existing Parent Interests), and Class 8 (Section 510(b) Claims) (collectively, the "Deemed Rejecting Classes"), which were Impaired and deemed to reject the Plan. Holders of Claims and Interests in Class 5 (Intercompany Claims) and Class 6 (Intercompany Interests) (the "Deemed Accepting/Rejecting Classes" and, together with the Unimpaired Classes and the Deemed Rejecting Classes, the "Non-Voting Classes") are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or are Impaired and deemed to reject the Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the Plan.

16.     The Debtors served the Non-Voting Status Notice and Opt Out Forms and Combined Hearing Notice on all Holders of Claims or potential Claims (other than Intercompany Claims) and Holders of Interests (other than Intercompany Interests) in the Non-Voting Classes. The Non-Voting Status Notice and Opt Out Forms informed recipients of (i) their status as holders or potential holders of Claims or Interests in non-voting classes, (ii) provided the full text of the release, exculpation, and injunction provisions set forth in the Plan, (iii) included a form by which holders could elect to opt out of the Third-Party Release by checking a prominently featured and clearly labeled box, and (iv) enclosed a postage prepaid, return-addressed envelope in which holders could return their opt out elections to the Claims and Noticing Agent.

17.     The Notices adequately summarized the material terms of the Plan, including classification and treatment of claims and the release, exculpation, and injunction provisions of the Plan. Further, because the Opt Out Form was included in both the Ballots and the Non-Voting Status Notice and Opt Out Form, every known stakeholder, including holders of Unimpaired

Claims and Interests, was provided with the means by which they can opt out of the Third-Party Release, including pre-addressed prepaid return envelopes.

**K.    Voting.**

18.    As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, and any applicable nonbankruptcy law, rule, or regulation. Class 3 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code. Accordingly, at least one Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**L.    Plan Supplement.**

19.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents are good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and all other applicable rules, laws, and requirements, and no other or further notice is required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. The Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date, subject to the terms of the Plan and the Restructuring Support Agreement. The Notice Parties and holders of Claims and Interests were provided due, adequate, and sufficient notice of the Plan Supplement.

**M.    Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

20.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code. In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

(i)    *Proper Classification—Sections 1122 and 1123.*

21.    The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into 8 Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

(ii)    *Specified Unimpaired Classes—Section 1123(a)(2).*

22.    The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims, as applicable, in the following Classes are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Claims and Interests |
|:---:|---|
| 1 | Other Secured Claims |
| 2 | Other Priority Claims |
| 5 | Intercompany Claims |
| 6 | Intercompany Interests |

23.    For the avoidance of doubt, holders of Class 5 Intercompany Claims and Class 6 Intercompany Interests are Unimpaired and conclusively presumed to have accepted the Plan, or are Impaired and deemed to reject the Plan, and, in either event, are not entitled to vote to accept or reject the Plan. Additionally, Article II of the Plan specifies that Allowed Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims will be paid in full in accordance with the terms of the Plan, although these Claims are not classified under the Plan.

(iii)    *Specified Treatment of Impaired Classes—Section 1123(a)(3).*

24.      The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes

(the "Impaired Classes") are Impaired under the Plan within the meaning of section 1124 of the

Bankruptcy Code, and describes the treatment of such Classes:

| Class | Claims and Interests |
|:-----:|:---------------------|
| 3 | Credit Facility Claims |
| 4 | General Unsecured Claims |
| 5 | Intercompany Claims |
| 5 | Intercompany Interests |
| 7 | Existing Parent Interests |
| 8 | Section 510(b) Claims |

25.      For the avoidance of doubt, holders of Class 5 Intercompany Claims and Class 6

Intercompany Interests are Unimpaired and conclusively presumed to have accepted the Plan, or

are Impaired and deemed to reject the Plan, and, in either event, are not entitled to vote to accept

or reject the Plan.

(iv)    *No Discrimination—Section 1123(a)(4).*

26.      The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

The Plan provides for the same treatment by the Debtors for each Claim or Interest in each

respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable

treatment of such Claim or Interest.

(v)    *Adequate Means for Plan Implementation—Section 1123(a)(5).*

27.      The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

The provisions in Article IV and elsewhere in the Plan, and in the exhibits and attachments to the

Plan, the Disclosure Statement, and the Plan Supplement provide, in detail, adequate and proper

means for the Plan's implementation, including regarding:  (a) the general settlement of Claims

and Interests; (b) the Asset Sales; (c) the funding and sources of consideration for the Plan distributions; (d) the vesting of assets in the Wind-Down Debtors; (e) the appointment of the Plan Administrator; (f) the dissolution of the Debtors; (g) the preservation of Causes of Action; (h) the effectuation and implementation of documents and further transactions; (i) the cancellation of existing securities and agreements; (j) the authorization, approval, and entry of corporate actions under the Plan; (k) the creation of the Professional Escrow Account; and (l) any other necessary documentation related to the Asset Sale or other Restructuring Transactions.

(vi)     *Voting Power of Equity Securities—Section 1123(a)(6).*

28.     The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. The Plan does not provide for the issuance of equity or other securities of the Debtors, including non-voting equity securities.

(vii)     *Directors and Officers—Section 1123(a)(7).*

29.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Article IV.B of the Plan, as of the Effective Date, the existing boards of directors or managers, as applicable, of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Wind-Down Debtors.  In addition, Article IV.B provides that the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Wind-Down Debtors and shall succeed to the powers of the Wind-Down Debtors' managers, directors, and officers.

(viii)     *Impairment / Unimpairment of Classes—Section 1123(b)(1).*

30.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

(ix) *Treatment of Executory Contracts and Unexpired Leases—Section 1123(b)(2).*

31.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article V of the Plan provides that all Executory Contracts or Unexpired Leases not otherwise assumed or rejected will be deemed rejected by the applicable Wind-Down Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (1) are identified on the Assumed Executory Contracts and Unexpired Leases Schedules; (2) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (3) are the subject of a motion to assume filed on or before the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any sale transaction pursuant to a Sale Order that is not this Confirmation Order; (5) are a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (6) are a D&O Liability Insurance Policy.

32.     The Debtors' determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases.

(x) *Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).*

33.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. In addition, the compromises and settlements embodied in the Plan and the negotiated support in

the Restructuring Support Agreement preserve value by enabling the Debtors to avoid extended, value-eroding litigation that could delay the Debtors' emergence from chapter 11 and the parties to the Restructuring Support Agreement have provided significant value to the Debtors and their Estates, and the compromises and settlements in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

34.     Article IX.C of the Plan describes certain releases granted by the Debtors (the "<u>Debtor Release</u>").  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release.  Such release is a necessary and integral element of the Plan, and is fair, reasonable, and in the best interests of the Debtors, the Estates, and holders of Claims and Interests.  Also, the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Debtor Release; (c) given, and made, after due notice and opportunity for hearing; and (d) a bar to any of the Debtors asserting any Claim or Cause of Action released by the Debtor Release.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  The Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan.

35.     The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process.  Each of the Released Parties made significant concessions and contributions to these Chapter 11 Cases.  The Debtor Release for the Debtors' current and former directors and officers is appropriate because the Debtors' directors and officers share an identity of interest with the Debtors, supported the Plan and these Chapter 11 Cases, actively participated in meetings and negotiations during these Chapter 11 Cases, and have provided other valuable

16

consideration to the Debtors to facilitate the Debtors' reorganization. The Debtor Release for the parties to the Restructuring Support Agreement is appropriate because such parties supported the Plan and certain parties to the Restructuring Support Agreement have agreed to extend financing and have provided additional liquidity (including by providing debtor-in-possession financing under the DIP Credit Agreement) thereby providing valuable consideration to the Debtors to facilitate the Debtors' reorganization.

36.    Article IX.D of the Plan describes certain releases granted by the Releasing Parties (the "Third-Party Release"). The Third-Party Release is an integral part of the Plan. Like the Debtor Release, the Third-Party Release facilitated participation in the Restructuring Support Agreement, the Plan, and the chapter 11 process generally. The Third-Party Release was a critical and integral component of the Restructuring Support Agreement and the creditors' agreement to support the Plan thereby preventing significant and time-consuming litigation regarding the parties' respective rights and interests. The Third-Party Release was a core negotiation point in connection with the Restructuring Support Agreement and instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders. As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring  process by, among other things, supporting the Plan.

37.    The Third-Party Release is consensual as to all parties in interest, including all Releasing Parties, and such parties in interest were provided notice of the chapter 11 proceedings, the Plan, the deadline to object to confirmation of the Plan, received the Combined Hearing Notice or the Non-Voting Status Notice and Opt Out Forms, as applicable, and were properly informed that the Holders of Claims against or Interests in the Debtors that did not check the "Opt Out" box on the applicable Ballot or Opt Out Form, returned in advance of the Voting Deadline would be

deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties.  Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the Non-Voting Status Notice and Opt Out Forms, and the Combined Hearing Notice.  Further, holders in the Non-Voting Classes also received a pre-addressed prepaid return envelope to facilitate the submission of any opt out election.

38.     The Third-Party Release provides finality for the Debtors, the Wind-Down Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Wind-Down Debtors.  The Combined Hearing Notice sent to holders of Claims and Interests and published in *The New York Times* (U.S. national edition) and the *Financial Times* (global edition) on June 19, 2023 and the Ballots sent to all holders of Claims and Interests entitled to vote on the Plan, in each case, unambiguously stated that the Plan contains the Third-Party Release.  Such release is a necessary and integral element of the Plan, and are fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and all holders of Claims and Interests.  Also, the Third-Party Release is:  (a) specific in language and scope; (b) given in exchange for a substantial contribution and for the good and valuable consideration provided by the Released Parties that is integral to the success of the Plan; (c) a condition to the good faith settlement and compromise of the claims released by the Third-Party Release; (d) in the best interests of the Debtors and all holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

39.     The exculpation, described in Article IX.E of the Plan (the "Exculpation"), is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and is appropriately released and exculpated from any obligation, Cause of Action, or liability for any prepetition or postpetition act taken or omitted to be taken in connection with, relating to, or arising out of the Debtors' restructuring efforts, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpation, including its carve-out for actual fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction and others.

40.     The injunction provision set forth in Article IX.F of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Release, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve this purpose.

41.     Pursuant to Article IV.B of the Plan and in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, but subject to Article IX of the Plan, each Wind-Down Debtor, as applicable, shall retain and may enforce all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the Effective Date.  The provisions regarding the preservation of Causes of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

42.     The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article IX.B of the Plan (the "Lien Release") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

43.     As further described in the Frist Day Declaration, Disinterested Director Neal Goldman and his counsel, Quinn Emanuel Urquhart & Sullivan, LLP, conducted an investigation into certain matters, including insider transactions (the "Investigation").  Pursuant to the Investigation, Mr. Goldman determined that the Debtor Release and Exculpation are appropriate.

(xi)    *Additional Plan Provisions—Section 1123(b)(6)).*

44.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xii)    *Cure of Defaults —Section 1123(d).*

45.    Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  The Debtors or the Wind-Down Debtors, as applicable, shall pay the Cure amounts, if any, in the ordinary course of the Debtors' business, on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may agree.  If there is any dispute regarding any Cure, the ability of the Wind-Down Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the applicable Cure amount shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Wind-Down Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.  On June 29, 2023, the Debtors filed the Assumed Executory Contracts and Unexpired Leases Schedules as Exhibit B and Exhibit C to the Plan Supplement.  On July 13, 2023, the Debtors filed an amended Assumed and Assigned Stalking Horse Bidder Executory Contracts and Unexpired Leases Schedule as Exhibit C to the Plan Supplement.  As soon as was reasonably practicable thereafter, the Debtors served sufficient notice on the counterparties to the Assumed Executory Contracts and Unexpired Leases listed thereon.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**N.    Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

46.     The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

   a.     is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;

   b.     has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

   c.     complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable nonbankruptcy law, rule and regulation, the Scheduling Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**O.     Plan Proposed in Good Faith—Section 1129(a)(3).**

47.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the Restructuring Support Agreement, the Asset Sale, the process leading to Confirmation, including the overwhelming support of holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  The Debtors' good faith is evident from the facts and the record of these Chapter 11 Cases, the Plan, the Disclosure Statement, and the record of the Combined Hearing and other proceedings held in these Chapter 11 Cases.

48.     These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purpose maximizing the value of the Debtors' Estates and to effectuate a successful Asset Sale of the Debtors' business.  The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders.  The Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and

at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to these Chapter 11 Cases.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### P.      Payment for Services or Costs and Expenses—Section 1129(a)(4).

49.      The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

### Q.      Directors, Officers, and Insiders—Section 1129(a)(5).

50.      Because the Plan provides for the dissolution of the Debtors' Estates and the existing board of directors or managers, as applicable, of the Debtors and the dismissal of any remaining officers, directors, managers, or managing members of any Debtor, section 1129(a)(5) of the Bankruptcy Code does not apply to the Debtors.  To the extent section 1129(a)(5) applies to the Debtors during the Wind-Down, they have satisfied the requirements of this provision by, among other things, disclosing the identity of the Plan Administrator.

### R.      No Rate Changes—Section 1129(a)(6).

51.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

### S.      Best Interest of Creditors—Section 1129(a)(7).

52.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached as Exhibit E to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered, prior to, or in connection with the

Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**T.      Acceptance by Certain Classes—Section 1129(a)(8).**

53.     Classes 1 and 2 are Unimpaired Classes under the Plan, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  The Voting Class, Class 3, has voted to accept the Plan.  Holders of Claims and Interests in Classes 5 and 6 are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or are Impaired and deemed to reject the Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the Plan.  Holders of Interests in Classes 7 and 8 receive no recovery on account of their Claims and Interests pursuant to the Plan and are deemed to have rejected the Plan.  Although section 1129(a)(8) has not been satisfied with respect to the Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to each of the Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to the Rejecting Classes as described further below.  As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**U.      Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

54.      The treatment of Allowed Administrative Claims, DIP Claims, Professional Claims, and Priority Tax Claims under Article II of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**V.      Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

55.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Report, the Voting Class, which is impaired, voted to accept the Plan by the requisite numbers and amounts of Claims and Interests, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code.

**W.      Feasibility—Section 1129(a)(11).**

56.      The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, the Combined Hearing, including the Wind-Down Budget, (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, except as provided in the Plan; and (e) establish that the Debtors or the Wind-Down Debtors, as applicable, will have sufficient funds available to meet their obligations under the Plan.

### X.      Payment of Fees—Section 1129(a)(12).

57.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article XIII.C of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

### Y.      Continuation of Employee Benefits—Section 1129(a)(13).

58.      The Debtors do not have any remaining obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).   Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases and the Plan.

### Z.      Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).

59.      Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.   The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

### AA.      "Cram Down" Requirements—Section 1129(b).

60.      The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have been deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.   *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.   *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable and meets the requirements that (a) no holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no holder of a Claim in a Class senior to such Class is receiving more than 100% on account of its Claim.   Accordingly, the Plan is fair and equitable to all holders of Claims and Interests in the Deemed Rejecting Classes.   *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because

similarly situated creditors and interest holders will receive substantially similar treatment on account of their Claims and Interests irrespective of Class.  The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**BB.    Only One Plan—Section 1129(c).**

61.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan is the only chapter 11 plan Filed in each of these Chapter 11 Cases.

**CC.    Principal Purpose of the Plan—Section 1129(d).**

62.    No Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**DD.    Not Small Business Case—Section 1129(e).**

63.    The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**EE.    Good Faith Solicitation—Section 1125(e).**

64.    The Debtors and the parties to the Restructuring Support Agreement—the Company Parties, the Consenting Sponsor, and the Consenting Stakeholders,[4] and with respect to each of the foregoing parties, each of such party's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, and advisors of each of the foregoing, as applicable—have acted in "good faith" within the

---

[4]    Each as defined in the Restructuring Support Agreement.

meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable

provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective

activities relating to support and consummation of the Plan, including the execution, delivery, and

performance of the Restructuring Support Agreement, and solicitation and receipt of acceptances

of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**FF.**     **Satisfaction of Confirmation Requirements.**

65.     Based on the foregoing, the Plan satisfies the requirements for Confirmation set

forth in section 1129 of the Bankruptcy Code.

**GG.**     **Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

66.     Each of the conditions precedent to the Effective Date, as set forth in Article X.A

of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with

Article X.B of the Plan.

**HH.**     **Implementation.**

67.     All documents necessary to implement the transactions contemplated by the Plan,

including those contained and summarized in the Plan Supplement, and all other relevant and

necessary documents (including the Restructuring Support Agreement) have been negotiated in

good faith and at arm's-length and shall, upon completion of documentation and execution, be

valid, binding, and enforceable agreements and shall not be in conflict with any federal or state

law.   The documents and agreements are essential elements of the Plan and entry into and

consummation of the transactions contemplated by each such document or agreement is in the best

interests of the Debtors, the Estates, and the Holders of Claims and Interests.  The Debtors have

exercised reasonable business judgment in determining which documents and agreements to enter

into and have provided sufficient and adequate notice of such documents and agreements.  The

Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**II.      Good Faith.**

68.      The Debtors and their respective directors, officers, management, counsel, advisors, and other agents have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors or the Wind-Down Debtors, as appropriate, and their respective officers, directors, and advisors, including the Plan Administrator, have been, are, and will continue to act in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order and the Plan to reorganize the Debtors' businesses and effectuate the Restructuring Transactions.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.      **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

2.      **Disclosure Statement.**  The Disclosure Statement is approved in all respects.

3.      **Ballots.**  The form of Class 3 (Credit Facility Claim) Ballot attached to the Solicitation Affidavit as Exhibit J is approved.

4.      **Solicitation Procedures.**  The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages, as set forth in the Disclosure Statement Motion, the

Confirmation Brief, and the Voting Report, in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules and are approved.  The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Voting Report and as provided by the Ballots are approved.

5. **Notices.**  The publication and service of the Notices is deemed to be sufficient and appropriate under the circumstances.  The form of the Combined Hearing Notice attached as Exhibit 6 to the Scheduling Order, the Non-Voting Status Notice and Opt Out Forms, substantially in the forms attached as Exhibits 4 and 5 to the Scheduling Order, and service thereof comply with the requirements of the Bankruptcy Code and the Bankruptcy Rules under the circumstances of these Chapter 11 Cases and are approved.

6. **Voting Record Date.**  June 11, 2023, as the Voting Record Date, and July 13, 2023, as the Voting Deadline, are hereby established and approved with respect to the solicitation of votes to accept, and voting on, the Plan.

7. **Tabulation Procedures.**  The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Disclosure Statement Motion, the Voting Report, and the Ballots are approved.

8. **Confirmation of the Plan.**  The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

9. **Approval of the Asset Sale.**  The Debtors have provided adequate and sufficient notice of the Asset Sale under the facts and circumstances of these cases.  Upon entry of this Confirmation Order, pursuant to sections 1123 and 363 of the Bankruptcy Code, the Asset Sale set forth in the Asset Purchase Agreement, and all transactions, covenants, agreements, conditions,

and releases contemplated thereby, are authorized and approved.  The Debtors are authorized, but not directed, to enter into and perform under the Asset Purchase Agreement without further order of this Court.  The Debtors and each other party to the Asset Purchase Agreement are hereby authorized, without further order of the Court, to take any and all actions necessary or appropriate to (a) consummate the Asset Sale in accordance with the Plan, the DIP Credit Agreement, the DIP Order, the Asset Purchase Agreement, and this Order, (b) perform, consummate, implement and close fully the Asset Purchase Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Sale pursuant to the Asset Purchase Agreement, (c) perform, consummate, and implement any preparatory transactions and any other actions as may be necessary or appropriate to effect a corporate restructuring of the Debtors' and the Wind-Down Debtors' respective businesses or corporate structure in order to effectuate the Asset Sale, including, without limitation, by issuance of any necessary Securities, notes, instruments, certificates, and other documents or any necessary inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions, and (d) apply the proceeds of the Asset Sale in accordance with the terms of the DIP Credit Agreement and the Plan.  For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall require the Debtors or the Purchaser to effectuate or close the Asset Sale.  Entry of this Confirmation Order shall constitute approval of the Asset Sale and Asset Purchase Agreement.

10.     Notwithstanding anything herein to the contrary but subject in all respects to the Asset Purchase Agreement, effective on and subject to the closing of the Asset Sale:

> a.   Pursuant to sections 105(a), 363(b), 363(f), and 1123 of the Bankruptcy Code, the Acquired Assets[5] shall be transferred to the Purchaser free and

---

[5]     As defined in the Asset Purchase Agreement.

clear of any and all Liens, Claims, Interests, charges, and other encumbrances of any kind or nature;

b.   Consistent with the DIP Credit Agreement and the DIP Order, as applicable, all Liens, Claims, Interests, charges, and other encumbrances on the Acquired Assets securing any obligations of the Debtors or the Wind-Down Debtors prior to the closing of the Asset Sale shall attach to the proceeds of the Asset Sale, in the order of their priority, with the same validity, force and effect, if any, which they had against such Acquired Assets prior to the closing of the Asset Sale;

c.   Neither the Purchaser nor any of its affiliates are or shall be deemed to: (a) be legal successors to the Wind-Down Debtors or their estates by reason of any theory of law or equity, (b) have, *de facto* or otherwise, merged with or into the Wind-Down Debtors, or (c) be an alter ego or a mere continuation or substantial continuation or successor of the Wind-Down Debtors in any respect;

d.   Neither the Purchaser nor any of their affiliates shall assume or in any way be responsible for any liability or obligation of any of the Wind-Down Debtors and/or their estates;

e.   Solely with respect to the Acquired Assets and not with respect to any proceeds thereof, each holder of any Liens, Claims, Interests, charges, and other encumbrances of any kind or nature against the Acquired Assets shall be deemed to have waived and released such Liens, Claims, Interests, charges, and other encumbrances of any kind or nature, without regard to whether such holder has executed or filed any applicable release.  Any such holder of such Liens, Claims, Interests, charges, and other encumbrances of any kind or nature is directed to execute and deliver any waivers, releases, or other related documentation reasonably requested by the Debtors or the Purchaser to evidence the release of its Liens, Claims, Interests, charges, and other encumbrances of any kind or nature in the Acquired Assets; *provided* that such documentation does not release any Liens, Claims, Interests, charges, and other encumbrances in the proceeds of the Acquired Assets.  Any person or entity that has filed any financing statements, mortgages, deeds of trust, mechanic's liens, lis pendens, or any other documents or agreements evidencing a Lien on the Acquired Assets is directed to deliver to the Debtors prior to the closing of the Asset Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Liens which the person or entity has with respect to the Acquired Assets;

f.   In the event that such termination statements, instruments of satisfaction, or releases of all Liens are not filed in accordance with the foregoing paragraph, the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Confirmation Order, which, once

filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the Acquired Assets of any kind or nature whatsoever but shall not release any Liens in respect of the proceeds of the Acquired Assets;

g.   This Confirmation Order, if filed, registered, or otherwise recorded, shall be effective as a conclusive determination that all Liens, Claims, Interests, charges, and other encumbrances of any kind or nature existing as to the Acquired Assets prior to the closing of the Asset Sale have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected and that such Liens, Claims, Interests, charges, and other encumbrances have attached to the proceeds of the Acquired Assets; *provided* that this Confirmation Order shall be binding and effective regardless of whether any such filing, registration, or recordation occurs;

h.   The Asset Purchase Agreement and the Asset Sale are not subject to rejection or avoidance (whether through any avoidance, fraudulent transfer, preference or recovery, claim, action or proceeding arising under chapter 5 of the Bankruptcy Code or under any similar state or federal Law or any other cause of action) by the Debtors, any chapter 7 or chapter 11 trustee of the Debtors' bankruptcy estates, or any other person or entity.  The Asset Purchase Agreement, this Confirmation Order, and the Debtors' obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases, including the Plan, any other order confirming any chapter 11 plan, or any subsequent order of this Court without the prior written consent of the Purchaser;

i.   Any amounts that become payable by any of the Debtors to the Purchaser pursuant to the Asset Purchase Agreement shall (a) be entitled to administrative expense claim status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; (b) not be subordinate to any other administrative expense claim against the Debtors; (c) not be altered, amended, discharged or affected by any chapter 11 plan proposed or confirmed in these Chapter 11 Cases; (d) be paid by the applicable Debtors in the time and manner provided for in the Asset Purchase Agreement without further order of this Court; and (e) not be subject to any bar date in these Chapter 11 Cases or any requirement to file any request for allowance of administrative claim or proof of claim;

j.   Neither the Debtors, the Purchaser, nor any parent or affiliate of the Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement or the Asset Sale to be avoided under section 363(n) of the Bankruptcy Code;

k.  The Purchaser is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby;

l.  The Purchaser shall not have any liability arising out of or in connection with (i) Professional Claims incurred by the Purchaser prior to the closing or any obligation to fund the Professional Fee Escrow, (ii) Restructuring Expenses and any consent fees, (iii) the Restructuring Support Agreement and any fees or obligations thereunder, (iv) the DIP Claims, and (vi) any adequate protection claims under the DIP Order, Bankruptcy Code § 507(b), or otherwise; and

m.  Subject to the terms of the Asset Purchase Agreement, any consent rights in the Restructuring Support Agreement, the Plan, or this Confirmation Order of any Person or Entity shall not be enforceable against or apply to the Purchaser.

11.  **Objections Overruled.**  All objections and all statements and reservations of rights pertaining to approval of the Disclosure Statement and Confirmation of the Plan that have not been withdrawn, waived, or settled are hereby **OVERRULED** and **DENIED** on the merits.

12.  **Deemed Acceptance of Plan.**  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan, as modified by the Plan Modifications.  No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

13.  **No Action Required.**  Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act, the Texas Business Organizations Code (including section 101.606 thereof), section 1142(b) of the Bankruptcy Code, and any other comparable provisions under applicable law, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, File, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions,

and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Asset Purchase Agreement.

14.     **Binding Effect.**  Subject to Article X of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, any and all holders of Claims or Interests (irrespective of whether holders of such Claims or Interests have, or are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

15.     Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors as applicable, and their respective successors and assigns.

16.     **Incorporation by Reference.**  The terms and provisions of the Plan, including the terms of the Asset Purchase Agreement, and the exhibits thereto are incorporated by reference and are an integral part of this Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, the Asset Purchase Agreement, and all other relevant and necessary documents shall, on and after the Effective Date, be binding in all respects upon, and shall inure to the benefit of, the Debtors,

their Estates and their creditors, and their respective successors and assigns, non-debtor affiliates, any affected third parties, all holders of equity interests in the Debtors, all holders of any Claims, whether known or unknown, against the Debtors, any holders of Claims against or on all or any portion of the Acquired Assets owned by the Debtors, including, but not limited to all contract counterparties, Borrowers, leaseholders, governmental units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar entities for the Debtors, if any, subsequently appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases, and each of their respective affiliates, successors, and assigns.

17. **Vesting of Assets.** Except as otherwise provided in the Plan, this Confirmation Order, the Sale Order, the Asset Purchase Agreement(s), or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, but after consummation of the Asset Sale(s), pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the assets of the Debtors shall vest in the Wind-Down Debtors for the purpose of winding down the Estates, free and clear of all Liens, Claims, charges, or other encumbrances; *provided* that, after funding the Professional Fee Escrow Account, the collateral, or proceeds of sales of such collateral, of the Wind-Down Debtors securing the DIP Claims and Credit Facility Claims shall remain subject to the liens and claims of the DIP Lenders and the Credit Facility Lenders, as applicable, to the same extent and in the same priority as such liens and claims were enforceable against the Debtors and the Debtors' assets, until such DIP Claims and Credit Facility Claims, are satisfied in accordance with the Plan. On and after the Effective Date, except as otherwise provided for in the Plan, this Confirmation Order, the Sale Order, the DIP Orders, or the Asset Purchase Agreement(s), the

Debtors and the Wind-Down Debtors may operate their business and use, acquire, or dispose of property solely in accordance with the Wind-Down Budget, and compromise or settle any Claims, Interests, or Causes of Action.

18.     **Wind-Down Debtors.**   On and after the Effective Date, the Wind-Down Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible in accordance with the Wind-Down Budget, (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided hereunder, (d) funding distributions in accordance with the Wind-Down Budget, (e) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns and regulatory notices, (g) complying with its continuing obligations under the Plan, this Confirmation Order, the Asset Purchase Agreement(s), and the DIP Orders (as applicable), if any, and (h) administering the Plan in an efficacious manner.

19.     The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, (b) the DIP Orders (as applicable), and (c) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

20.     **Plan Administrator.**   On and after the Effective Date, the Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other Governing Body, subject to the provisions of the Plan (and

all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, sale director, or Governing Body of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Wind-Down Debtors, and shall succeed to the powers of the Wind-Down Debtors' managers, directors, officers, and other Governing Bodies without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, managers, or Governing Body, as applicable, of the Debtors, or the members of any Debtor.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors.  The foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, in any capacity, including pursuant to any transition services agreement entered into on or after the Effective Date by and between the Wind-Down Debtors and the Purchaser(s).  The Plan Administrator shall use best efforts to operate in a manner consistent with the Wind-Down Budget.

21.      The Plan Administrator shall have the sole discretion, with the reasonable consent of the Credit Facility Lenders, to make a discretionary transition services payment to certain of the Debtors' employees in accordance with the Wind-Down Budget.

22.      **Dissolution of the Debtors.**  Subject in all respects to the terms of the Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

23.      As of the Effective Date, the Plan Administrator shall act as the sole officer, director, manager, and Governing Body, as applicable, of the Wind-Down Debtors with respect to

their affairs.  Subject in all respects to the terms of the Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall: (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of each Debtor under the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.  The filing by the Plan Administrator of any of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule.

24.     **Effectiveness of All Actions.**  All actions contemplated by the Plan, including all actions in connection with the Asset Sale, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Wind-Down Debtors and with the effect that such actions had been deemed taken by unanimous action of such officers, directors, managers, members, or equity holders.

25.     **General Settlement of Claims.**  Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement

of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.

26.     The Plan is hereby deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action and controversies pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

27.     **Sources of Plan Consideration.**  The Debtors shall fund distributions under the Plan pursuant to the Asset Sale(s) with, as applicable: (a) Distributable Asset Sale Proceeds; (b) Cash on hand; (c) Cash or non-Cash consideration received by the Debtors in any consummated Asset Sale(s); and (d) the Wind-Down Proceeds.

28.     **Restructuring Transactions**.  The Debtors, the Plan Administrator, and the Purchaser are authorized, without further order of the Court, subject to the terms of the Restructuring Support Agreement, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under or in connection with the Plan and the Asset Purchase Agreement(s) that are consistent with and pursuant to the terms and conditions of the Plan, the Restructuring Support Agreement, and the Asset Purchase Agreement(s), including:  (a) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms

40

that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (c) rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (d) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state Law; and (e) any transaction described in the Restructuring Transactions Memorandum, if applicable.

29.     All actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions are hereby authorized.

30.     The Debtors or Wind-Down Debtors, as applicable, are hereby authorized, immediately upon entry of this Confirmation Order, without the need to seek any third-party consents, corporate approvals, or further approvals of this Court, to take any and all actions necessary to implement the Restructuring Transactions contemplated by the Restructuring Transactions Memorandum.

31.     **Cancellation of Existing Securities and Agreements.**  On the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise provided in the Plan and this Confirmation Order, all notes, instruments, certificates, credit agreements, indentures, Securities and other documents evidencing or governing Claims or Interests (other than those Claims or Interests Reinstated under the Plan) shall be cancelled and the rights of the Holders thereof and obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect; *provided,*

*however*, that notwithstanding anything to the contrary contained herein, any agreement that governs the rights of the DIP Agent or the Credit Facility Agent shall continue in effect solely for the purposes of allowing (i) the DIP Agent or the Credit Facility Agent to enforce their rights against any Person other than any of the Released Parties, pursuant and subject to the terms of the Plan, the DIP Order, the DIP Documents, or the Credit Documents, as applicable, (ii) the DIP Agent or the Credit Facility Agent to receive distributions under the Plan and to distribute them to the Holders of the Allowed DIP Claims and Allowed Credit Facility Claims, in accordance with the terms of the Plan, the DIP Order, the DIP Documents, or the Credit Documents, as applicable, (iii) the DIP Agent or the Credit Facility Agent to enforce their rights to payment of fees, expenses, and indemnification obligations, in accordance with the terms of the DIP Order, the DIP Documents, or the Credit Documents, as applicable, (iv) the DIP Agent and the Credit Facility Agent to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including to enforce any obligation under the Plan owed to the DIP Agent, the Credit Facility Agent, or Holders of the DIP Claims or the Credit Facility Claims, as applicable. Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to the Plan or this Confirmation Order. Nothing contained herein shall be deemed to cancel, terminate, release or discharge the obligations of the Debtors or any of their counterparts under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors or assumed and assigned to a Purchaser, pursuant to a Final Order or hereunder.

32.     **Distributions.**  The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.

33.     **Preservation of Causes of Action.**  In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX of the Plan, any applicable Final Order, and any applicable Asset Purchase Agreement, each Wind-Down Debtor shall retain and may enforce, as reasonably directed by the Credit Facility Agent, all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX of the Plan, pursuant to a Final Order, or as assigned and transferred pursuant to any applicable Asset Purchase Agreement, which, in each case, shall be deemed released and waived by the Debtors and the Wind-Down Debtors as of the Effective Date.

34.     The Wind-Down Debtors may pursue such retained Causes of Action, as reasonably directed by the Plan Administrator and the Credit Facility Agent.  **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Wind-Down Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it.  Except as specifically released under the Plan or pursuant to a Final Order or as assigned or transferred pursuant to any applicable Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as**

**otherwise expressly provided in the Plan, including** Article IX of the Plan**, pursuant to a Final Order, or as assigned and transferred under any applicable Asset Purchase Agreement. Unless otherwise agreed upon in writing by the parties to the applicable Causes of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before thirty days after the Effective Date.  Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Wind-Down Debtor, without the need for any objection or responsive pleading by the Wind-Down Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**  The Wind-Down Debtors may settle any such objection, subject to the prior consent of the Credit Facility Agent, without any further notice to or action, order, or approval of the Bankruptcy Court.  If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors or Wind-Down Debtors, as applicable, and the objection party for thirty days, such objection shall be resolved by the Bankruptcy Court.  Unless any Causes of Action of the Debtors against an Entity are expressly waived, transferred, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, or any applicable Asset Purchase Agreement(s), the Wind-Down Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

35.     The Wind-Down Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired

Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, any Causes of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtors, except as otherwise expressly provided in the Plan, including Article IX of the Plan.  The applicable Wind-Down Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  As reasonably directed by the Credit Facility Agent, the Wind-Down Debtors shall have the right and authority to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

36.     **Subordination.**  Pursuant to section 510 of the Bankruptcy Code, the Wind-Down Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

37.     **Compromise of Controversies.**  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

38.     **Treatment of Executory Contracts and Unexpired Leases.**  Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts

and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

39. **Assumption and Rejection of Contracts and Leases.** On the Effective Date, except as otherwise provided herein all Executory Contracts or Unexpired Leases will be deemed rejected by the applicable Wind-Down Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are identified on the Assumed Executory Contracts and Unexpired Leases Schedules; (2) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (3) is the subject of a motion to assume filed on or before the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any sale transaction pursuant to a Sale Order that is not this Confirmation Order; (5) are a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (6) is a D&O Liability Insurance Policy.

40. The payment of Cures, if any, shall be paid in accordance with Article V.C of the Plan. The assumption of Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts and leases. Each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition executory or unexpired nature of the Executory Contract or

46

Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, all obligations under assumed Executory Contracts shall be performed by the Wind-Down Debtors whether such obligation arises prior to or after the Effective Date.

41.     Unless otherwise provided in this Order or the Plan, assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, in connection with any Asset Sale or otherwise, and full payment of any applicable Cure pursuant to Article V.C of the Plan shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption.

42.     Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to this Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

43.     Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Effective Date. **Any Claims arising from the rejection of an Executory**

**Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Wind-Down Debtors, the Estates, or their property without the need for any objection by the Wind-Down Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B.4 of the Plan and may be objected to in accordance with the provisions of Article VIII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

44. **Abandonment.** The Debtors are authorized, with the reasonable consent of the DIP Agent, to abandon any equipment, fixtures, furniture, or other personal property (collectively, the "Personal Property") that may be located at the premises of a property subject to an Unexpired Lease that is rejected pursuant to the Plan free and clear of all liens, claims, encumbrances, interests, and rights of the Debtors, and all such property is deemed abandoned effective as of the date of the rejection of the Unexpired Lease. The applicable counterparty to each Unexpired Lease is authorized to dispose of the abandoned Personal Property without notice or liability to any party.

45. **Indemnification.** As of the Effective Date, all indemnification provisions in place as of the Effective Date for current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall (1) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or this Confirmation Order,

(2) remain intact, in full force and effect, and irrevocable, (3) not be limited, reduced or terminated after the Effective Date, and (4) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on or after the Petition Date.

46. **Directors' and Officers' Liability Insurance.** Notwithstanding anything in the Plan to the contrary, the Wind-Down Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of this Confirmation Order constitutes this Court's approval of the Wind-Down Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed. In addition, after the Effective Date, none of the Wind-Down Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

47.     **Authorization to Consummate.**  The Debtors are authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article X of the Plan.

48.     **Professional Compensation.**  All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than sixty days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Wind-Down Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account.  The Wind-Down Debtors will establish the Professional Fee Escrow Account in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the Effective Date.  From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Wind-Down Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

49.     **Release, Exculpation, Discharge, and Injunction Provisions.**  The release, exculpation, discharge, and injunction provisions set forth in Article IX of the Plan are approved and authorized in their entirety, and such provisions are effective and binding on all parties and Entities to the extent provided therein.

a.      **Discharge of Claims and Termination of Interests.**

50.     Pursuant to, and to the maximum extent provided by, section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, or in any contract,

instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date, and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (3) the Holder of such a Claim or Interest has accepted the Plan. This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

b. **Release of Liens**.

51.     **Except as otherwise provided in the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims**

that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind-Down Debtors and their successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder (including the DIP Agent or Credit Facility Agent)) shall be authorized and directed, at the sole cost and expense of the Wind-Down Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder (including the DIP Agent or Credit Facility Agent)), and to take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

52.    To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, at the sole cost and expense of the Wind-Down Debtors, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Wind-Down Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security

interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

53.     On the Effective Date, except as set forth in the Asset Purchase Agreement(s), the assets sold in such Asset Sale(s) shall be transferred to and vest in the Purchaser(s) free and clear of all Liens, Claims, charges, interests or other encumbrances pursuant to sections 363(f) and 1141(c) of the Bankruptcy Code and in accordance with the terms of the Sale Order (which may be this Confirmation Order), the Plan, and the Asset Purchase Agreement(s), as applicable.

c.     Releases by the Debtors.

54.     Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives (including any Plan Administrator that may be appointed), and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or

otherwise, that the Debtors, the Wind-Down Debtors, their Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement, the DIP Facility, the DIP Documents, the Asset Purchase Agreement(s), the Credit Agreement, the pursuit of Confirmation and Consummation, the pursuit of the Asset Sale(s), the pre- and postpetition marketing and sale process, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (i) former directors and officers (excluding (A) those related to the Purchasers, and (B) those affiliated with, appointed by, or otherwise related to, the

Sponsor, the Credit Facility Agent, or the Credit Facility Lenders) from claims or causes of action relating to or arising from payments made by or on behalf of any of the Debtors more than three years before the Petition Date; (ii) Claims and/or Causes of Action against the Former CEO and relating to the Former CEO Severance Payment; or (iii) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth in the Plan.

55.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Wind-Down Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

d.     **Releases by the Releasing Parties.**

56.     Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, pursuant to

**section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permissible under applicable Law, each Releasing Party (other than the Debtors or the Wind-Down Debtors), in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim, Cause of Action, directly or derivatively, by, through, for, or because of a Releasing Party, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Wind-Down Debtor, and each other Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates or their Affiliates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement, the DIP Facility, the DIP Documents, the Asset Purchase Agreement(s), the Credit Agreement, the pursuit of Confirmation and Consummation, the pursuit of the**

Asset Sale(s), the pre- and postpetition marketing and sale process, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth in the Plan.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (i) former directors and officers (excluding (A) those related to the Purchasers, and (B) those affiliated with, appointed by, or otherwise related to, the Sponsor, the Credit Facility Agent, or the Credit Facility Lenders) from claims or causes of action relating to or arising from payments made by or on behalf of any of the Debtors more than three years before the Petition Date; or (ii) Claims and/or Causes of Action against the Former CEO and relating to the Former CEO Severance Payment.

57.    **Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the**

good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.

     e.   **Exculpation.**

   58.  **Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action or any claim arising from the Petition Date to the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable the Chapter 11 Cases, the Restructuring Support Agreement, the Disclosure Statement, the Plan (including the Plan Supplement), the DIP Documents, the Asset Purchase Agreement(s), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (excluding, for the avoidance of doubt, providing any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract,**

instrument, document, or other agreement contemplated by the Plan), except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.  Notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

f.      **Injunction.**

59.      **Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or this Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with**

respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

60.    No Person or Entity may commence, continue, amend or pursue a Claim or Cause of Action or Covered Claim, as applicable, of any kind against the Debtors, the Wind-Down Debtors, the Exculpated Parties, the Released Parties, or Covered Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action or Covered Claim, as applicable, subject to Article IX.C, Article IX.D, and Article IX.E of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action or Covered Claim, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action or

**Covered Claim, as applicable, against any such Debtor, Wind-Down Debtor, Exculpated Party, Released Party, or Covered Party, as applicable.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Wind-Down Debtor, Exculpated Party, Released Party, or Covered Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.**

61.    **The Bankruptcy Court will have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.**

62.    **Compliance with Tax Requirements.**  In connection with the Plan, to the extent applicable, and as permitted by and subject to the Wind-Down Budget (which, for the avoidance of doubt, shall be in form and substance acceptable to the DIP Agent),  the Debtors, Wind-Down Debtors, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  For the avoidance of doubt, only the Debtors and the Wind-Down Debtors, as applicable, shall be responsible for such tax withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and

reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the Wind-Down Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

63. **Section 1146 Exemption from Transfer Taxes.** To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers (whether from a Debtor to a Wind-Down Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Wind-Down Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including in connection with any Asset Sale), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local

governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

64. **Schedules and SOFAs.**  The Debtors' requirement to file their schedules of assets and liabilities and statements of financial affairs is waived.

65. **Section 341(e) Waiver.**  U.S. Trustee need not and shall not convene a meeting of creditors or equity holders pursuant to section 341(e) of the Bankruptcy Code

66. **Section 345 Waiver.**  Section 345 of the Bankruptcy Code and any provision of the U.S. Trustee Guidelines requiring that the Bank Accounts listed in the Debtors' Cash Management Motion be U.S. Trustee authorized depositories is waived with respect to the Bank Accounts existing as of the Petition Date.

67. **Provisions Regarding the DIP.**  The DIP Agent, at the direction of the requisite DIP Lenders (on behalf of all of the DIP Secured Parties), shall be deemed (subject to and effective on the Effective Date) to have retroactively waived the deemed Roll Up, in whole or in part, with respect to any DIP Claims that are not satisfied in full from any sale of all, substantially all, or a portion of the Debtors' assets, as approved by the Bankruptcy Court, at which point such Roll-Up DIP Obligations shall revert to being Prepetition First Lien Obligations held ratably by the DIP Lenders as if such Prepetition First Lien Obligations were never subject to the Roll Up.

68.     **Provisions Regarding Texas Taxing Authorities.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors or Wind-Down Debtors, as applicable, shall pay all allowed 2022 tax claims (the "Delinquent Tax Claims") of the Texas Taxing Authorities[6], to the extent such Delinquent Tax Claims are Allowed Secured Tax Claims, in accordance with section 1129(a)(9)(D) of the Bankruptcy Code. The Delinquent Tax Claims shall include all accrued interest, if any, properly charged under applicable non-bankruptcy law through the date of payment of such claims.  The Debtors, the Wind-Down Debtors, and the Purchaser, as applicable, shall be responsible for their respective pro-rated portion of the 2023 taxes in accordance with the Plan and the Asset Purchase Agreement, as applicable.  The Texas Taxing Authorities shall retain their statutory liens against the taxable property (including all related sale proceeds to the extent specified in the applicable sale order), and their existing lien priority, until the Delinquent Tax Claims and 2023 ad valorem taxes (the "Texas Tax Claims") are paid in full including statutory penalty and interest, if applicable, as provided by the Texas Tax Code.  Any actions retained by the Debtors against the Texas Taxing Authorities pursuant to the Plan or Plan Supplements shall be limited to those permitted by the Texas Tax Code. All parties' rights and defenses under applicable law and the Bankruptcy Code with respect to the foregoing, including their right to dispute or object to the validity or enforcement of the Tax Liens under applicable non-bankruptcy law, are fully preserved.  The Texas Taxing Authorities reserve the right to amend their claims to reflect the final 2023 tax amounts and are not capped by any amounts set forth in the Plan.

---

[6]     The Texas Taxing Authorities include:  Bell County Tax Appraisal District, Bexar County, Cypress-Fairbanks ISD, Fort Bend County, Fort Bend Co WCID #02, Frisco ISD, Harris County, Hays CISD, Hays County, Nueces County, Plano ISD, Tarrant County, and Williamson County.

69.     **Provisions Regarding Landlords.**  Notwithstanding anything herein to the contrary, upon assumption or assumption and assignment of an Assigned Contract that constitutes a lease of non-residential real property (an "Unexpired Lease"), Debtors or Purchaser, as applicable, shall be obligated to pay or perform any accrued, but unbilled and not yet due to be paid or performed, obligations as of the applicable deadline to file objections or disputes to the Cure Costs for such Unexpired Lease under such assumed or assumed and assigned Unexpired Lease, including, but not limited to, common area maintenance charges, taxes, year-end adjustments, indemnity obligations, and repair and maintenance obligations, under the Unexpired Lease, regardless of whether such obligations arose before or after the Effective Date, on the date upon which such obligations become due in the ordinary course; *provided* that all rights of the parties to any such assumed or assumed and assigned Unexpired Lease to dispute amounts asserted thereunder are fully preserved; *provided, further*, that nothing herein shall relieve the Debtors or Purchaser, as applicable, from any amounts that come due between (a) the applicable deadline to file objections or disputes to the Cure Costs for such Unexpired Lease and (b) the effective date of assumption or assumption and assignment for such Unexpired Lease.

70.     **Documents, Mortgages, and Instruments.**  Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

71.     **Continued Effect of Stays and Injunction.**  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Court that is in existence upon entry of this Confirmation Order shall remain in full force and effect until the Effective Date.  All

injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

72.    **Nonseverability of Plan Provisions Upon Confirmation.**  Each provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' or Wind-Down Debtors' consent, as applicable; and (c) nonseverable and mutually dependent.

73.    **Post-Confirmation Modifications.**    Without need for further order or authorization of the Court, the Debtors or the Wind-Down Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to any applicable consents or consultation rights set forth therein) and the Restructuring Support Agreement.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the Restructuring Support Agreement, the Debtors and the Wind-Down Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI.A of the Plan.

74.     **Applicable Nonbankruptcy Law.**  The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

75.     **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to File any list, schedule, or statement with the Court or the Office of the U.S. Trustee is permanently waived as to any such list, schedule, or statement not Filed as of the Confirmation Date.

76.     **Governmental Approvals Not Required.**   This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

77.     **Reporting.**  After entry of this Confirmation Order, the Debtors or the Wind-Down Debtors, as applicable, shall have no obligation to file with the Court, serve on any parties, or otherwise provide any party with any other report that the Debtors or the Wind-Down Debtors, as applicable, were obligated to provide under the Bankruptcy Code or an order of the Court, including obligations to provide (a) any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases and (b) monthly operating reports (even for those periods for which a monthly operating report was not filed before the Confirmation Date); *provided* that the Debtors or Wind-Down Debtors, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements.

78.     **Notices of Confirmation and Effective Date.**  The Wind-Down Debtors shall serve notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (as may be revised to the applicable Debtors, the "Confirmation Order and Effective Date Notice"), in accordance with Bankruptcy Rules 2002 and 3020(c) on all holders of Claims and Interests and the Notice Parties within ten (10) Business Days after the Effective Date.   Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.   The Combined Hearing Notice and this Confirmation Order and Effective Date Notice are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

79.     **Failure of Consummation.**  If Consummation does not occur for a Debtor, the Plan shall be null and void in all respects as to such Debtor and nothing contained in the Plan, the Disclosure Statement, or Restructuring Support Agreement as to such Debtor shall: (1) constitute a waiver or release of any Claims by the Debtors, Claims, or Interests; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity.

80.     **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) of the Bankruptcy Code.

81.     **Waiver of 14-Day Stay.**  Notwithstanding Bankruptcy Rule 3020(e) or 6004, this Confirmation Order is effective immediately and not subject to any stay.

82.     **References to and Omissions of Plan Provisions.**  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

83.     **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

84.     **Effect of Conflict.**  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

85.     **Termination of Challenge Period.**  The Challenge Period (as defined in the DIP Order) for all parties in interest is terminated as of the first date of the Combined Hearing, and the stipulations, admissions, findings, and releases contained in the DIP Order shall be binding on the Debtors' estates and all parties in interest.

86.     **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be Filed shall commence upon the entry hereof.

87.     **Retention of Jurisdiction.**  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and

related to, these Chapter 11 Cases, including the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

**Signed:  July 28, 2023.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**<u>Exhibit A</u>**

**Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CENTER FOR AUTISM AND RELATED | ) | Case No. 23-90709 (DRJ) |
| DISORDERS, LLC, *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FIRST AMENDED JOINT CHAPTER 11 PLAN OF**
**CENTER FOR AUTISM AND RELATED DISORDERS, LLC AND ITS DEBTOR AFFILIATES**

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:       (713) 752-4221
Email:            mcavenaugh@jw.com
                     jwertz@jw.com
                     mstull@jw.com
                     vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors-in-Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:            christopher.greco@kirkland.com
                     allyson.smith@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

Dated:  July 24, 2023

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Center for Autism and Related Disorders, LLC (1512); CARD Holdings, LLC (1453); CARD Intermediate Holdings I, LLC (N/A); CARD Intermediate Holdings II, LLC (3953); and SKILLS Global, LLC (4192).  The location of the Debtors' principal place of business is 9089 S Pecos Rd., Suite 3600, Henderson, Nevada 89074.

# TABLE OF CONTENTS

## Table of Contents

**Page**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ....................................................................................................................... 1
    A.    Defined Terms. ................................................................................................... 1
    B.    Rules of Interpretation. ..................................................................................... 12
    C.    Computation of Time. ...................................................................................... 13
    D.    Governing Law. ............................................................................................... 13
    E.    Reference to Monetary Figures. ....................................................................... 13
    F.    Reference to the Debtors or the Wind-Down Debtors. .................................... 13
    G.    Controlling Document. ..................................................................................... 13

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS,  PROFESSIONAL FEE CLAIMS, AND
PRIORITY CLAIMS, ................................................................................................................... 14
    A.    Administrative Claims. .................................................................................... 14
    B.    DIP Claims. ...................................................................................................... 14
    C.    Professional Fee Claims. .................................................................................. 14
    D.    Priority Tax Claims. ......................................................................................... 15
    E.    Restructuring Expenses. ................................................................................... 15

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .................................. 16
    A.    Classification of Claims and Interests. ............................................................ 16
    B.    Treatment of Claims and Interests. .................................................................. 17
    C.    Special Provision Governing Unimpaired Claims. .......................................... 20
    D.    Elimination of Vacant Classes. ........................................................................ 20
    E.    Voting Classes, Presumed Acceptance by Non-Voting Classes. ..................... 20
    F.    Intercompany Interests. .................................................................................... 20
    G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ................. 20
    H.    Controversy Concerning Impairment. .............................................................. 20
    I.    Subordinated Claims. ....................................................................................... 20

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .............................................................. 21
    A.    General Settlement of Claims and Interests. .................................................... 21
    B.    Asset Sale(s). .................................................................................................... 21
    C.    Tax Matters. ..................................................................................................... 24
    D.    Cancellation of Existing Securities and Agreements. ...................................... 24
    E.    Corporate Action. ............................................................................................ 24
    F.    Indemnification Obligations. ............................................................................ 25
    G.    Section 1146 Exemption. ................................................................................. 25
    H.    Director and Officer Liability Insurance. ......................................................... 25

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 26
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. .... 26
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ...... 26
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ... 27
    D.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. ......... 27
    E.    Insurance Policies. ........................................................................................... 28
    F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. ........................ 28
    G.    Reservation of Rights. ...................................................................................... 28
    H.    Nonoccurrence of Effective Date. .................................................................... 29

|  | I. | Contracts and Leases Entered Into After the Petition Date. | 29 |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ........................................................ 29
| | A. | Distributions on Account of Claims Allowed as of the Effective Date. | 29 |
| | B. | Distribution Agent. | 29 |
| | C. | Rights and Powers of the Distribution Agent. | 29 |
| | D. | Delivery of Distributions and Undeliverable or Unclaimed Distributions. | 30 |
| | E. | Manner of Payment. | 31 |
| | F. | Compliance with Tax Requirements. | 31 |
| | G. | Allocations. | 31 |
| | H. | Foreign Currency Exchange Rate. | 31 |
| | I. | Setoffs and Recoupment. | 31 |
| | J. | Claims Paid or Payable by Third Parties | 32 |

**ARTICLE VII. THE PLAN ADMINISTRATOR** ........................................................................... 32
| | A. | The Plan Administrator. | 32 |
| | B. | Wind Down. | 32 |
| | C. | Tax Returns. | 33 |
| | D. | Dissolution of the Wind-Down Debtors | 33 |

**ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** ........................................................................................................... 33
| | A. | Allowance of Claims. | 34 |
| | B. | Claims Administration Responsibilities. | 34 |
| | C. | Disputed Claims Process. | 34 |
| | D. | Estimation of Claims and Interests. | 34 |
| | E. | Adjustment to Claims or Interests without Objection. | 35 |
| | F. | Disallowance of Claims or Interests. | 35 |
| | G. | No Distributions Pending Allowance. | 35 |
| | H. | Distributions After Allowance. | 35 |
| | I. | No Postpetition Interest on Claims. | 35 |

**ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ................ 36
| | A. | Discharge of Claims and Termination of Interests. | 36 |
| | **B.** | **Release of Liens.** | 36 |
| | **C.** | **Releases by the Debtors.** | 37 |
| | **D.** | **Releases by the Releasing Parties.** | 38 |
| | **E.** | **Exculpation.** | 38 |
| | **F.** | **Injunction.** | 39 |
| | G. | Protections Against Discriminatory Treatment. | 40 |
| | H. | Document Retention. | 40 |
| | I. | Reimbursement or Contribution. | 40 |

**ARTICLE X. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN** ........................ 40
| | A. | Conditions Precedent to the Effective Date. | 40 |
| | B. | Waiver of Conditions. | 41 |
| | C. | Effect of Failure of Conditions. | 42 |
| | D. | Substantial Consummation | 42 |

**ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** .................... 42
| | A. | Modification and Amendments. | 42 |
| | B. | Effect of Confirmation on Modifications. | 42 |
| | C. | Revocation or Withdrawal of Plan. | 42 |

ARTICLE XII. RETENTION OF JURISDICTION ................................................................................................ 43

ARTICLE XIII. MISCELLANEOUS PROVISIONS ........................................................................................... 44
    A.      Immediate Binding Effect. ........................................................................................................ 44
    B.      Additional Documents. ............................................................................................................. 45
    C.      Payment of Statutory Fees. ....................................................................................................... 45
    D.      Statutory Committee and Cessation of Fee and Expense Payment. .......................................... 45
    E.      Reservation of Rights. .............................................................................................................. 45
    F.      Successors and Assigns. ............................................................................................................ 45
    G.      Notices. ..................................................................................................................................... 45
    H.      Term of Injunctions or Stays. ................................................................................................... 46
    I.      Entire Agreement. ..................................................................................................................... 46
    J.      Plan Supplement. ...................................................................................................................... 47
    K.      Nonseverability of Plan Provisions. ......................................................................................... 47
    L.      Votes Solicited in Good Faith. .................................................................................................. 47
    M.      Closing of Chapter 11 Cases. ................................................................................................... 47
    N.      Waiver or Estoppel. .................................................................................................................. 47
    O.      Creditor Default ........................................................................................................................ 47

## INTRODUCTION

Center for Autism and Related Disorders, LLC, and the above-captioned debtors and debtors in possession (collectively, the "Debtors"), propose this joint chapter 11 plan for the resolution of the outstanding claims against, and interests in, the Debtors. Holders of Claims or Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Interests in each Debtor pursuant to the Bankruptcy Code. The classification of Claims and Interests set forth in Article III of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A. *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1. "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through and including the Effective Date; (b) Allowed Professional Fee Claims; (c) DIP Claims; (d) Credit Facility Adequate Protection Claims; and (e) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code.

2. "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of General Administrative Claims and Professional Fee Claims, which: (a) with respect to other General Administrative Claim, shall be thirty days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be sixty days after the Effective Date.

3. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the reference Entity was a debtor in a case under the Bankruptcy Code.

4. "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Claims Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order, including the DIP Order); (b) a Claim that is scheduled by the Debtors as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order, including the DIP Order; *provided*, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order. Any Claim that has been or is hereafter listed as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts

1

permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Wind-Down Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

5.　　"*Asset Purchase Agreement*" means the definitive purchase agreement for an Asset Sale, including all exhibits and schedules thereto, and as may be amended, modified, or supplemented in accordance with the terms thereof.

6.　　"*Asset Sale(s)*" means the sale(s), if any, in one or more transactions, of all, substantially all, or a portion of the Estates' assets pursuant to section 363 of the Bankruptcy Code.

7.　　"*Asset Sale Proceeds*" means any Cash proceeds of the Asset Sale(s).

8.　　"*Assumed Executory Contracts and Unexpired Leases Schedules*" means the (a) Assumed Wind-Down Executory Contracts and Unexpired Leases Schedule and the (b) Assumed and Assigned Stalking Horse Bidder Executory Contracts and Unexpired Leases Schedule, each of which shall be included in the Plan Supplement, and which may be amended, modified, or supplemented from time to time.

9.　　"*Assumed Wind-Down Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Wind-Down Debtors, pursuant to the Plan, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

10.　　"*Assumed and Assigned Stalking Horse Bidder Executory Contracts and Unexpired Leases Schedule*" means the Executory Contracts and Unexpired Leases to be assumed and assigned to the Stalking Horse Bidder (if any), pursuant to the Plan, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

11.　　"*Auction*" means the auction (if any) held pursuant to the Bidding Procedures.

12.　　"*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or other similar or related state, federal, or foreign statutes, common law, or other applicable Law.

13.　　"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended, and as applicable to the Chapter 11 Cases.

14.　　"*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas.

15.　　"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time, and as applicable to the Chapter 11 Cases.

16.　　"*Bar Date(s)*" means the applicable date(s) designated by the Bankruptcy Court (or pursuant to the Bankruptcy Rules) as the last date for Filing Proofs of Claims or Interests in the Chapter 11 Cases of the respective Debtors, including the Claims Bar Date, the Governmental Unit Bar Date, and any Administrative Claims Bar Date.

17.　　"*Bar Date Order*" means the order of the Bankruptcy Court that establishes the applicable date(s) as the Bar Date(s).

18. "*Bidding Procedures*" means the procedures governing the Auction and sale of all, substantially all, or a portion of the Debtors' assets, as approved by the Bankruptcy Court and as may be amended from time to time in accordance with the terms thereof.

19. "*Business Day*" means any day other than a Saturday, Sunday, a "legal holiday" (as defined in section 9006(a) of the Bankruptcy Code), or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

20. "*CARD Parent*" means CARD Holdings LLC.

21. "*Cash*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

22. "*Cash Collateral*" has the meaning ascribed to such term in section 363(a) of the Bankruptcy Code.

23. "*Causes of Action*" means any claims, cross-claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, tortious interference, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any other Avoidance Action.

24. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

25. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors or any of the Estates.

26. "*Claims and Noticing Agent*" means Stretto, Inc., the claims, noticing, and solicitation agent retained or to be retained by the Debtors in the Chapter 11 Cases.

27. "*Claims Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

28. "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

29. "*Class*" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

30. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

31. "*Committee*" means the official committee of unsecured creditors, if any, appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

32. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

33. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

34. "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

35. "*Confirmation Order*" means the order of the Bankruptcy Court in form and substance reasonably acceptable to the DIP Agent confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

36. "*Consummation*" means the occurrence of the Effective Date as to the applicable Debtor.

37. "*Covered Claims*" means any Claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Stalking Horse Agreement and related prepetition transactions, the pre- and postpetition marketing process, the DIP Facilities, pursuit of the Asset Sale(s), the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the DIP Facilities, the Disclosure Statement, the Plan, the Plan Supplement, the Asset Purchase Agreement(s) (if any), the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the DIP Documents, solicitation of votes on the Plan, the prepetition negotiation and settlement of Claims, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event or other occurrence taking place on or after the Petition Date on or before the Effective Date.

38. "*Covered Party*" means, with respect to the Debtors and Wind-Down Debtors, each Debtor Related Party and Wind-Down Debtor Related Party, including, for the avoidance of doubt, each such Entity's current and former Affiliates, directors, board observers, managers, officers, control persons, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, and other professionals, each in their capacity as such.

39. "*Credit Agreement*" means that certain amended and restated facility agreement, dated as of November 21, 2018, by and among certain of the Debtors, as borrowers or guarantors, the lenders party thereto from time to time, and the agent thereunder, as amended, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date.

40. "*Credit Documents*" means the Credit Agreement and any other document governing the Credit Facility.

41. "*Credit Facility*" means that certain prepetition credit facility provided for under the Credit Agreement.

42. "*Credit Facility Adequate Protection Claims*" means any Claims granted to the Credit Facility Lenders as adequate protection pursuant to the DIP Orders.

43. "*Credit Facility Claims*" means any and all Claims arising under, derived from, or based upon the Credit Agreement.

44. "*Credit Facility Agent*" means Ares Capital Corporation, or its duly appointed successor as administrative agent under the Credit Facility.

45. "*Credit Facility Deficiency Claims*" means any portion of the Credit Facility Claims that is not satisfied in full from the Asset Sale Proceeds of all Credit Facility Collateral.

46. "*Credit Facility Collateral*" means "Collateral" as such term is defined in the Credit Agreement.

47. "*Credit Facility Lenders*" means the lenders party to the Credit Agreement from time to time.

48. "*Cure*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) assumed by the Debtors or assumed and assigned to a Purchaser, as applicable, pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

49. "*Cure Notice*" means, with respect to an Executory Contract or Unexpired Lease to be assumed under the Plan or assumed and assigned under any Asset Purchase Agreement pursuant to section 365 of the Bankruptcy Code, a notice that (a) sets forth the proposed amount to be paid on account of a Cure Claim in connection with the assumption of such Executory Contract or Unexpired Lease; (b) notifies the counterparty to such Executory Contract or Unexpired Lease that such party's Executory Contract or Unexpired Lease may be assumed under the Plan or assumed and assigned to a Purchaser in connection with any Asset Sale; (c) sets forth the procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases, including the proposed objection deadline, and for the resolution by the Bankruptcy Court of any such disputes; and (d) states that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance of the Executory Contract(s) to be assigned, including the assignee's financial wherewithal and willingness to perform under such Executory Contract or Unexpired Lease.

50. "*Cure/Assumption Objection Deadline*" means the date that is 14 days after Filing of the Assumed Executory Contracts and Unexpired Leases Schedules and service of the Cure Notice; *provided* that if any Executory Contract or Unexpired Lease is added to the Assumed Executory Contracts and Unexpired Leases Schedules after the Filing of the initial Assumed Executory Contracts and Unexpired Leases Schedules, or an Executory Contract or Unexpired Lease proposed to be assumed by the Debtors is proposed to be assigned to a third party after the Filing of the initial Assumed Wind-Down Executory Contracts and Unexpired Leases Schedules, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of (a) 14 days after service of the amended Assumed Executory Contracts and Unexpired Leases Schedules with such modification and (b) the date of the scheduled Confirmation Hearing or Sale Hearing, as applicable.

51. "*D&O Liability Insurance Policies*" means all insurance policies of any of the Debtors for directors', managers', and officers' liability existing as of the Petition Date (including any "tail policy") and all agreements, documents, or instruments relating thereto.

52. "*Debtor Release*" means the release set forth in Article IX.C of the Plan.

53. "*DIP Agent*" means Ares Capital Corporation in its capacity as administrative and collateral agent under the DIP Credit Agreement.

54. "*DIP Claim*" means any and all Claims arising under, derived from, or based upon the DIP Documents, including claims for principal amounts outstanding, interest, fees, expenses, costs and other charges of the DIP Agent and the DIP Lenders arising under or related to the DIP Facility.

55. "*DIP Credit Agreement*" means the definitive superpriority senior secured debtor-in-possession credit agreement, dated as of June 13, 2023, by and among the Debtors party thereto, the DIP Agent and the DIP Lenders, as amended, amended and restated, supplemented, or otherwise modified in accordance with its terms.

56. "*DIP Documents*" means the DIP Credit Agreement and any other documentation governing the DIP Facility, including the DIP Orders, which shall be in form and substance acceptable to the DIP Lenders in all respects.

57. "*DIP Facility*" means the credit facility provided for under the DIP Credit Agreement.

58. "*DIP Lenders*" means the lenders party to the DIP Credit Agreement from time to time.

59. "*DIP Loans*" means the loans under the DIP Facility.

60. "*DIP Order*" means any order entered in the Chapter 11 Cases approving the DIP Facility, including the Interim DIP Order and the Final DIP Order, which shall be in form and substance acceptable to the DIP Lenders.

61. "*Disclosure Statement*" means the related disclosure statement with respect to this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan, as may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

62. "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest: (a) that is not Allowed; (b) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law; (d) that is Filed in the Bankruptcy Court and not withdrawn, as to which an objection or request for estimation has been Filed; and (e) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

63. "*Distributable Asset Sale Proceeds*" means the Asset Sale Proceeds, *less* (i) the Wind-Down Budget, and (ii) in the case of an Asset Sale consummated with a Purchaser other than the Stalking Horse Bidder, the Bid Protection and Expense Reimbursement, in each case, payable pursuant to the terms of the Stalking Horse APA.

64. "*Distribution Agent*" means the Wind-Down Debtors or the Entity or Entities selected by the Debtors or the Wind-Down Debtors, as applicable, to make or facilitate distributions pursuant to the Plan.

65. "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Wind-Down Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Distribution Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

66. "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims are eligible to receive distributions under the Plan on account of Allowed Claims, which date shall be on or as soon as is reasonably practicable after the Effective Date.

67. "*Effective Date*" means, as to the applicable Debtor, the date that is the first Business Day on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article X.A of the Plan have been satisfied or waived in accordance with Article X.B of the Plan and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

68. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

69. "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case and all property (as defined in section 541 of the Bankruptcy Code) acquired by such Debtor after the Petition Date and before the Effective Date.

70.     "*Exculpated Parties*" means the Debtors.

71.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

72.     "*Existing Parent Interests*" means, collectively, all Interests in CARD Parent outstanding immediately prior to the Effective Date.

73.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

74.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

75.     "*Final DIP Order*" means the Bankruptcy Court's Final Order, in form and substance acceptable to the DIP Lenders, approving the DIP Facility and the Debtors' use of Cash Collateral on a final basis (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

76.     "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter that has not been reversed, stayed, modified, or amended, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order will not preclude such order from being a Final Order.

77.     "*Former CEO*" means the former chief executive officer of the Debtors in 2022.

78.     "*Former CEO Severance Payment*" means that certain severance payment of approximately $500,000 made by the Debtors to the Former CEO.

79.     "*General Administrative Claim*" means any Administrative Claim other than a Professional Fee Claim or a DIP Claim.

80.     "*General Unsecured Claim*" means any Claim, including any Credit Facility Deficiency Claim, against any of the Debtors that is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) an Other Secured Claim; (d) an Other Priority Claim; (e) a Credit Facility Claim (other than a Credit Facility Deficiency Claim, if any); (f) an Intercompany Claim; or (g) a Section 510(b) Claim.

81.     "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, special committee, or such similar governing body of any of the Debtors or the Wind-Down Debtors, as applicable.

82.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

83.     "*Governmental Unit Bar Date*" means the date by which Proofs of Claim must be Filed with respect to Claims held by Governmental Units.

84.     "*Holder(s)*" means an Entity holding a Claim against or an Interest in a Debtor, as applicable.

85.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

86.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor arising before the Petition Date.

87.     "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor.

88.     "*Interests*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, and all common stock, preferred stock, limited partner interests, general partner interests, limited liability company interests, and any other equity, ownership, beneficial or profits interests in any of the Debtors, whether or not transferable, and options, warrants, rights, or other securities, agreements or interests to acquire or subscribe for, or which are exercisable, convertible or exchangeable into or for the shares (or any class thereof) of, common stock, preferred stock, limited partner interests, general partner interests, limited liability company interests, or other equity, ownership, beneficial or profits interests in or of any Debtor, contractual or otherwise, including equity or equity-based incentives, grants or other instruments issued, granted or promised to be granted to current or former employees, directors, officers or contractors of the Debtors (in each case whether or not arising under or in connection with any employment agreement).

89.     "*Interim DIP Order*" means the Bankruptcy Court's order, in form and substance acceptable to the DIP Lenders, approving the DIP Facility and the Debtors' use of Cash Collateral on an interim basis (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

90.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time, and as applicable to the Chapter 11 Cases.

91.     "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

92.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

93.     "*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

94.     "*Other Secured Claims*" means any Secured Claim other than a DIP Claim, a Secured Tax Claim, or a Credit Facility Claim (other than a Credit Facility Deficiency Claim).

95.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

96.     "*Petition Date*" means June 11, 2023.

97.     "*Plan*" means this joint chapter 11 plan, the Plan Supplement, and all exhibits and schedules annexed hereto or referenced herein, in each case, as may be amended, supplemented, or otherwise modified from time to time in accordance with the Bankruptcy Code and the terms hereof.

98.     "*Plan Administrator*" means the person selected by the Debtors and reasonably acceptable to the Credit Facility Agent and the Sponsor to administer the Plan Administrator Assets in accordance with the Plan.  All costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid from the Plan Administrator Assets, subject to and in accordance with the Wind-Down Budget.

99.     "*Plan Administrator Agreement*" means, if applicable, that certain agreement entered into no later than the Effective Date setting forth, among other things, the Plan Administrator's rights, powers, obligations, and compensation, all of which shall be consistent with the applicable provisions of the Plan.

100. "*Plan Administrator Assets*" means, if applicable, on the Effective Date, all assets of the Estates vested in the Wind-Down Debtors to be administered by Plan Administrator, and, thereafter, all assets held from time to time by Wind-Down Debtors to be administered by Plan Administrator.

101. "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under this Plan.

102. "*Plan Supplement*" means the compilation of documents and forms of documents, term sheets, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed prior to the Confirmation Hearing to the extent available, and any additional documents Filed prior to the Effective Date as amendments to the Plan Supplement, including the following, as applicable: (a) to the extent known, the identity(ies) of the Plan Administrator; (b) the Assumed Executory Contracts and Unexpired Leases Schedules; (c) the Schedule of Retained Causes of Action; (d) the Wind-Down Budget; and (e) the Restructuring Transactions Memorandum. The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement up to the Effective Date as set forth in this Plan.

103. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

104. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

105. "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

106. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.C of this Plan.

107. "*Professional Fee Claim*" any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional on or after the Petition Date through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (including transaction and success fees) to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

108. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

109. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date, the Governmental Unit Bar Date or Administrative Claims Bar Date, as applicable.

110. "*Purchaser*" means the purchaser or purchasers (including, if applicable, the Stalking Horse Bidder) under any Asset Purchase Agreement(s), together with any successors to and permitted assigns of such purchaser(s).

111. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall not be discharged hereunder and the Holder's legal, equitable, and contractual rights on

account of such Claim or Interest shall remain unaltered by Consummation in accordance with section 1124(1) of the Bankruptcy Code.

112. "*Related Party*" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees. For the avoidance of doubt, the members of each Governing Body are Related Parties of the Debtors.

113. "*Released Parties*" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the Credit Facility Agent and each Credit Facility Lender; (d) the DIP Agent and each DIP Lender; (e) all Holders of Interests; (f) the Sponsor; (g) the Purchaser(s); (h) each current and former Affiliate of each Entity in clause (a) through the following clause (i); and (i) each Related Party of each Entity in clause (a) through this clause (i); *provided* that, in each case, an Entity shall not be a Released Party if such Entity: (x) elects to opt out of the releases contained in Article IX.D of the Plan; or (y) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article IX.D of the Plan that is not resolved before the Confirmation Date.

114. "*Releasing Parties*" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors, as applicable; (c) the Credit Facility Agent and each Credit Facility Lender; (d) the DIP Agent and each DIP Lender; (e) all Holders of Claims; (f) all Holders of Interests; (g) the Purchaser(s); (h) the Sponsor; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); and (j) each Related Party of each Entity in clause (a) through this clause (j); *provided* that, in each case, an Entity shall not be a Releasing Party if such Entity: (x) elects to opt out of the releases contained in Article IX.D of the Plan; or (y) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article IX.D of the Plan that is not resolved before the Confirmation Date.

115. "*Restructuring Expenses*" means the reasonable and documented prepetition and postpetition fees and out-of-pocket expenses incurred by each of the following advisors: (a) Latham & Watkins LLP; and (b) Hunton Andrews Kurth LLP, without further order of, or application to, the Bankruptcy Court, including, the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases, which shall be Allowed as an Administrative Claim upon occurrence and shall not be subject to any offset, defense, counter-claim, reduction, or credit.

116. "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, entered into as of June 11, 2023, including all exhibits thereto, by and among the Debtors and other parties thereto, as may be amended, modified, or supplemented from time to time, in accordance with its terms.

117. *"Restructuring Transactions"* means any transaction and any actions as may be necessary or appropriate to effect a restructuring of the Debtors' respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in this Plan, the issuance of all Securities, notes, instruments, certificates, and other documents required to be issued or executed pursuant to the Plan, one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions, as described in Article IV.A of the Plan.

118. "*Restructuring Transactions Memorandum*" means the summary of transaction steps to complete the Restructuring Transactions contemplated by the Plan or the Asset Sale(s), if applicable, which shall be (a) included in the Plan Supplement; and (b) consistent with the Plan.

119.     "*Sale Hearing*" means a hearing to approve any Asset Sale, which hearing may be the Confirmation Hearing.

120.     "*Sale Order*" means, with respect to any Asset Sale consummated pursuant to section 363 of the Bankruptcy Code, the Final Order of the Bankruptcy Court, in form and substance reasonably acceptable to the DIP Agent, approving such Asset Sale pursuant to the applicable Asset Purchase Agreement, which order may be the Confirmation Order.

121.     "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

122.     "*SEC*" means the U.S. Securities and Exchange Commission.

123.     "*Section 510(b) Claim*" means any Claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code, whether by operation of law or contract.

124.     "*Secured Claim*" means a Claim:  (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

125.     "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

126.     "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

127.     "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

128.     "*Sponsor*" means, collectively, Cardinal Buyer, LLC and Blackstone Capital Partners VII L.P., and any of their respective affiliates and funds or partnerships managed or advised by them or their respective affiliates.

129.     "*Stalking Horse Bid*" means the bid submitted by the Stalking Horse Bidder.

130.     "*Stalking Horse Bidder*" means Pantogran LLC and its designees as Purchaser of certain of the Debtors' assets pursuant to and in accordance with the Asset Purchase Agreement dated June 9, 2023.

131.     "*Third-Party Release*" means the release set forth in Article IX.D of the Plan.

132.     "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

133.     "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

134.     "*Unsecured Claim*" means any Claim that is not a Secured Claim.

135.     "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

136.     "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

137.     "*Wind-Down*" means the wind down and liquidation and dissolution of the Debtors' Estates following the Effective Date as set forth in Article VII.B hereof.

138.     "*Wind-Down Budget*" means a budget, in form and substance mutually acceptable to the DIP Agent, the Sponsor, and the Debtors, for the reasonable activities and expenses to be incurred in winding down and liquidating and dissolving the Debtors' Estates, as set forth in the Plan Supplement.

139.     *"Wind-Down Debtor"* means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on or after the Effective Date, and as described in Article VII.B to, among other things, effectuate the Wind-Down of the Debtors and the Wind-Down Debtor, commence, litigate and settle any Causes of Action that have vested that are not released, waived, settled, compromised, or transferred under the Plan and make distributions pursuant to the terms of the Plan and the Plan Administrator Agreement, *provided* that, for the avoidance of doubt, the Wind-Down Debtor shall not conduct any business operations or continue the Debtors' business operations after the Effective Date.

140.     *"Wind-Down Proceeds"* means the remaining amount (if any) of funds held by the Plan Administrator in excess of the Wind-Down Budget, including the proceeds of any Causes of Action set forth on the Schedule of Retained Causes of Action.

B.     *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (15) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (16) any immaterial effectuating provisions may be interpreted by the Wind-Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (18) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws.

C.  *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.  *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, not incorporated or formed under New York law shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Wind-Down Debtor, as applicable.

E.  *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.  *Reference to the Debtors or the Wind-Down Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

G.  *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, including the Plan Supplement, the Confirmation Order shall control; *provided* that, solely with respect to Plan Distributions to the extent there is any conflict between the Plan and the Confirmation Order, on the one hand, and any Sale Order, on the other hand, the Confirmation Order shall govern.

H.  *Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of the parties to the Restructuring Support Agreement, as applicable, and as respectively set forth therein, with respect to the form and substance of this Plan, all exhibits to this Plan, the Plan Supplement, and all other documents governing the Restructuring Transactions, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the Restructuring Support Agreement, as applicable, shall not impair such rights and obligations.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS, DIP CLAIMS,**
**PROFESSIONAL FEE CLAIMS, AND PRIORITY CLAIMS,**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.    *Administrative Claims.*

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Professional Fee Claims, DIP Claims, Credit Facility Adequate Protection Claims, or subject to 11 U.S.C. § 503(b)(1)(D), requests for payment of Allowed Administrative Claims must be Filed and served on the Debtors or the Wind-Down Debtors no later than the Administrative Claims Bar Date. **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date.** Objections to such requests, if any, must be Filed and served on the Plan Administrator and/or Wind-Down Debtors and the requesting party.

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court or as agreed with the Wind-Down Debtors.

B.    *DIP Claims.*

As of the Effective Date, the DIP Claims shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP Documents without the need for the DIP Agent or DIP Lenders to file any Proof of Claim or request for payment. Upon the satisfaction of the Allowed DIP Claims in accordance with the terms of the Sale Order (which may be the Confirmation Order), the Asset Purchase Agreement(s), and the Plan, as each as applicable, or other such treatment as contemplated by this Article II.B of the Plan on the Effective Date, all Liens and security interests granted to secure the DIP Claims shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

Except to the extent that a Holder of an Allowed DIP Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed DIP Claim, each Holder of an Allowed DIP Claim shall receive payment in full in Cash of its Allowed DIP Claim.

C.    *Professional Fee Claims.*

1.    Final Fee Applications and Payment of Professional Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than sixty days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing

in accordance with the procedures established by the Bankruptcy Court. The Wind-Down Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account. The Wind-Down Debtors will establish the Professional Fee Escrow Account in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the Effective Date. For the avoidance of doubt, this paragraph shall be subject to the DIP Order and any budget set forth therein with respect to Professional Fee Claims held by the Committee's Professionals.

> 2. Professional Fee Escrow Account.

On the Effective Date, the Wind-Down Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Wind-Down Debtors using Cash on hand. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Wind-Down Debtors, as applicable. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Wind-Down Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When such Allowed Professional Fee Claims have been paid in full, any remaining amount held in the Professional Fee Escrow Account shall promptly be paid to the Wind-Down Debtors without any further action or order of the Bankruptcy Court. For the avoidance of doubt, this paragraph shall be subject to the DIP Order and any budget set forth therein with respect to Professional Fee Claims held by the Committee's Professionals.

> 3. Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or the Wind-Down Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. For the avoidance of doubt, this paragraph shall be subject to the DIP Order and any budget set forth therein with respect to Professional Fee Claims held by the Committee's Professionals.

> 4. Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, this paragraph shall be subject to the DIP Order and any budget set forth therein with respect to Professional Fee Claims held by the Committee's Professionals.

D.    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.    *Restructuring Expenses.*

On the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, shall pay in full in Cash any outstanding Restructuring Expenses without the requirement for the filing of retention applications, fee applications,

or any other applications in the Chapter 11 Cases and without any requirement for further notice or Bankruptcy Court review or approval.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.  *Classification of Claims and Interests.*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan and making distributions in accordance with the Plan in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Person, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Persons, or cause the transfer of any assets. Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Persons after the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Credit Facility Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 6 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 7 | Existing Parent Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.  *Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Wind-Down Debtor and such Holder.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Claim or Interest becomes an Allowed Claim or an Allowed Interest, as applicable, or as soon as reasonably practicable thereafter.

1.  <u>Class 1 – Other Secured Claims</u>

   (a)  *Classification*:  Class 1 consists of all Other Secured Claims.

   (b)  *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claims agrees in writing to less favorable treatment, in exchange for the full and final satisfaction, settlement, release, and discharge of its Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Wind-Down Debtor:  (i) payment in full in Cash; (ii) Reinstatement of such Claim; or (iii) such other treatment rendering such Claim Unimpaired.

   (c)  *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.  <u>Class 2 – Other Priority Claims</u>

   (a)  *Classification*:  Class 2 consists of all Other Priority Claims.

   (b)  *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees in writing to less favorable treatment, in exchange for the full and final satisfaction, settlement, release, and discharge of its Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor or Wind-Down Debtor:  (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

   (c)  *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

3. Class 3 – Credit Facility Claims

    (a)    *Classification*:  Class 3 consists of all Credit Facility Claims.

    (b)    Allowance: As of the Effective Date, the Credit Facility Claims shall be Allowed Claims in the full amount outstanding under the Credit Documents without the need for the Credit Facility Agent or Credit Facility Lenders to file any Proof of Claim.

    (c)    *Treatment*:  Except to the extent that a Holder of an Allowed Credit Facility Claim agrees to less favorable treatment, on the Effective Date (or as soon as practicable thereafter with respect to the distribution of Wind-Down Proceeds as set forth in this sentence), in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Credit Facility Claim, each Holder of an Allowed Credit Facility Claim shall receive its Pro Rata share of the Distributable Asset Sale Proceeds and the Wind-Down Proceeds following payment in full in Cash of all Allowed Claims that are senior to Credit Facility Claims in priority of payment under the Bankruptcy Code; *provided, however,* that any portion of such Holder's Allowed Credit Facility Claim that is not fully satisfied pursuant to provisions (A) and (B) immediately above, shall still constitute an Allowed Credit Facility Claim up to the value of any remaining Credit Facility Collateral; *provided, further,* that any portion of such Holder's Allowed Credit Facility Claim that exceeds the value of such remaining Credit Facility Collateral (if any) shall constitute a Credit Facility Deficiency Claim and receive the treatment specified in Article III.B.4(b) of this Plan.

    (d)    *Voting:*  Class 3 is Impaired under the Plan.  Holders of Credit Facility Claims are entitled to vote to accept or reject the Plan.

4. Class 4 –General Unsecured Claims

    (a)    *Classification*:  Class 4 consists of all General Unsecured Claims.

    (b)    *Treatment*:  On the Effective Date, each General Unsecured Claim shall be discharged and released, and each Holder of General Unsecured Claim shall not receive or retain any distribution, property, or other value on account of such General Unsecured Claim.

    (c)    *Voting*:  Class 4 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan.

5. <u>Class 5 – Intercompany Claims</u>

   (a) *Classification*: Class 5 consists of all Intercompany Claims.

   (b) *Treatment:* Subject to the Restructuring Transactions Memorandum, each Allowed Intercompany Claim shall be Reinstated, distributed, contributed, set off, settled, cancelled and released, or otherwise addressed at the option of the Wind-Down Debtors; *provided* that no distributions shall be made on account of any Intercompany Claims.

   (c) *Voting*: Class 5 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

6. <u>Class 6 – Intercompany Interests</u>

   (a) *Classification*: Class 6 consists of all Intercompany Interests.

   (b) *Treatment*: Subject to the Restructuring Transactions Memorandum, each Intercompany Interest shall be Reinstated, distributed, contributed, set off, settled, cancelled and released, or otherwise addressed at the option of the Wind-Down Debtors.

   (c) *Voting*: Class 6 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

7. <u>Class 7 – Existing Parent Interests</u>

   (a) *Classification*: Class 7 consists of all Existing Parent Interests.

   (b) *Treatment*: On the Effective Date, and without the need for any further corporate or limited liability company action or approval of any board of directors, board of managers, members, shareholders, or officers of any Debtor or Wind-Down Debtor, as applicable, all Existing Parent Interests shall be cancelled, released, and extinguished without any distribution, and will be of no further force or effect, and each Holder of an Existing Parent Interest shall not receive or retain any distribution, property, or other value on account of such Existing Parent Interest.

   (c) *Voting*: Class 7 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Existing Parent Interests are not entitled to vote to accept or reject the Plan.

8. <u>Class 8 – Section 510(b) Claims</u>

   (a) *Classification*: Class 8 consists of all Section 510(b) Claims.

   (b) *Treatment*: On the Effective Date, all Section 510(b) Claims shall be discharged and released, and each Holder of a Section 510(b) Claim shall not receive or retain any distribution, property, or other value on account of its Section 510(b) Claim.

   (c) *Voting*: Class 8 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing herein shall affect the Debtors' or the Wind-Down Debtors' rights regarding any Unimpaired Claim, including, all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.      *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, and in exchange for the Debtors' and Wind-Down Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

G.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more Classes of Impaired Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article XI hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.      *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Any such contractual, legal, or equitable subordination rights shall be settled, compromised, and released pursuant to the Plan.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims and Interests.*

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.    *Asset Sale(s).*

1.    Asset Sale(s)

Continuing after the Petition Date, the Debtors will conduct a marketing process and Auction to solicit bids for Asset Sale(s), in accordance with the terms and conditions of the Bidding Procedures.  The Debtors will seek to elicit Asset Sale offers, if any, pursuant to the process set forth in the Bidding Procedures.  If the Debtors are able to secure a winning bid in accordance with the Bidding Procedures, the Holders of certain Claims will receive the Distributable Asset Sale Proceeds as set forth in Articles Article II and Article III of the Plan and the Asset Sale(s) will be consummated in accordance with the terms to be set forth in the Sale Order, Confirmation Order, and Plan Supplement, as applicable.  At any point, the Debtors may terminate pursuit of the Asset Sale(s) in accordance with the terms of the Bidding Procedures.

In the event that the Debtors determine to effectuate any Asset Sale(s), on or after the Confirmation Date, the Sale Order or Confirmation Order, as applicable, shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to consummate and effect such Asset Sale(s), including, among other things, transferring any purchased assets and interests to be transferred to and vested in any Purchaser free and clear of all Liens, Claims, charges or other encumbrances pursuant to the terms of any purchase agreement, approve the Asset Purchase Agreement(s), and authorize the Debtors or the Wind-Down Debtors, as applicable, to undertake the transactions contemplated by the Asset Purchase Agreement(s), including any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Asset Sale(s), including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law.

2.    Sources of Consideration for Plan Distributions

The Debtors shall fund distributions under the Plan pursuant to the Asset Sale(s) with, as applicable:  (a) Distributable Asset Sale Proceeds; (b) Cash on hand; (c) Cash or non-Cash consideration received by the Debtors in any consummated Asset Sale(s); and (d) the Wind-Down Proceeds.

3.    Vesting of Assets in the Wind-Down Debtors

Except as otherwise provided in the Plan, the Confirmation Order, the Sale Order, the Asset Purchase Agreement(s), or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, but after consummation of the Asset Sale(s), pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the assets of the Debtors shall vest in the Wind-Down Debtors for the purpose of winding down the Estates, free and clear of all

Liens, Claims, charges, or other encumbrances; *provided* that, after funding the Professional Fee Escrow Account, the collateral, or proceeds of sales of such collateral, of the Wind-Down Debtors securing the DIP Claims and Credit Facility Claims shall remain subject to the liens and claims of the DIP Lenders and the Credit Facility Lenders, as applicable, to the same extent and in the same priority as such liens and claims were enforceable against the Debtors and the Debtors' assets, until such DIP Claims and Credit Facility Claims, are satisfied in accordance with the Plan. On and after the Effective Date, except as otherwise provided for in the Plan, the Confirmation Order, the Sale Order, the DIP Orders, or the Asset Purchase Agreement(s), the Debtors and the Wind-Down Debtors may operate their business and use, acquire, or dispose of property solely in accordance with the Wind-Down Budget, and compromise or settle any Claims, Interests, or Causes of Action.

4.   Wind-Down Debtors

On and after the Effective Date, the Wind-Down Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible in accordance with the Wind-Down Budget, (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided hereunder, (d) funding distributions in accordance with the Wind-Down Budget, (e) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns and regulatory notices, (g) complying with its continuing obligations under the Plan, the Confirmation Order, the Asset Purchase Agreement(s), if any, and the DIP Orders (as applicable), and (h) administering the Plan in an efficacious manner.

The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, (b) the DIP Orders (as applicable) and (c) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

5.   Plan Administrator

On and after the Effective Date, the Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other Governing Body, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).   On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, sale director, or Governing Body of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Wind-Down Debtors, and shall succeed to the powers of the Wind-Down Debtors' managers, directors, officers, and other Governing Bodies without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, managers, or Governing Body, as applicable, of the Debtors, or the members of any Debtor.   From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors.   The foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, in any capacity, including pursuant to any transition services agreement entered into on or after the Effective Date by and between the Wind-Down Debtors and the Purchaser(s).   The Plan Administrator shall use best efforts to operate in a manner consistent with the Wind-Down Budget.

6.   Dissolution of the Debtors

Subject in all respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, manager, and Governing Body, as applicable, of the Wind-Down Debtors with respect to their affairs.   Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall: (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of each Debtor under

22

the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws. The filing by the Plan Administrator of any of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule.

      7.   <u>Preservation of Causes of Action.</u>

      In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX hereof, any applicable Final Order, and any applicable Asset Purchase Agreement, each Wind-Down Debtor shall retain and may enforce, as reasonably directed by the Credit Facility Agent, all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX hereof, pursuant to a Final Order, or as assigned and transferred pursuant to any applicable Asset Purchase Agreement, which, in each case, shall be deemed released and waived by the Debtors and the Wind-Down Debtors as of the Effective Date.

      The Wind-Down Debtors may pursue such retained Causes of Action, as reasonably directed by the Plan Administrator and the Credit Facility Agent. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Wind-Down Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. Except as specifically released under the Plan or pursuant to a Final Order or as assigned or transferred pursuant to any applicable Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article IX hereof, pursuant to a Final Order, or as assigned and transferred under any applicable Asset Purchase Agreement. Unless otherwise agreed upon in writing by the parties to the applicable Causes of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before thirty days after the Effective Date. Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Wind-Down Debtor, without the need for any objection or responsive pleading by the Wind-Down Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.** The Wind-Down Debtors may settle any such objection, subject to the prior consent of the Credit Facility Agent, without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors or Wind-Down Debtors, as applicable, and the objection party for thirty days, such objection shall be resolved by the Bankruptcy Court. Unless any Causes of Action of the Debtors against an Entity are expressly waived, transferred, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, or any applicable Asset Purchase Agreement(s), the Wind-Down Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

      The Wind-Down Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, any Causes of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtors, except as otherwise expressly provided in the Plan, including Article IX hereof. The applicable Wind-Down Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. As reasonably directed by the Credit Facility Agent, the Wind-Down Debtors shall have the right and authority, in consultation with the Credit Facility Agent, to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the

foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

        8.    <u>Effectuating Documents; Further Transactions.</u>

Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the Wind-Down Debtors, the Plan Administrator, and the respective officers, members and managers (as applicable) thereof are authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement, without the need for any approvals, authorizations, actions, notices, or consents, except for those expressly required pursuant to the Plan.

C.      *Tax Matters.*

The terms of the Plan, the Asset Sale(s), and the Restructuring Transactions shall be structured to minimize, to the extent practicable, the aggregate tax impact of the Restructuring Transactions on the Debtors and the Wind-Down Debtors, taking into account both the cash tax impact of the Restructuring Transactions on the Debtors in the tax year of the Restructuring Transactions and Asset Sale(s) and the tax liability of the Wind-Down Debtors in subsequent tax years.

D.      *Cancellation of Existing Securities and Agreements.*

On the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise provided in this Plan and the Confirmation Order, all notes, instruments, certificates, credit agreements, indentures, Securities and other documents evidencing or governing Claims or Interests (other than those Claims or Interests Reinstated under the Plan) shall be cancelled and the rights of the Holders thereof and obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to this Plan or the Confirmation Order. Nothing contained herein shall be deemed to cancel, terminate, release or discharge the obligations of the Debtors or any of their counterparts under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors or assumed and assigned to a Purchaser, pursuant to a Final Order or hereunder.

E.      *Corporate Action.*

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including implementation of the Restructuring Transactions and all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate or organizational structure of the Debtors or the Wind-Down Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Wind-Down Debtors, as applicable, in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the equityholders, members, directors, or officers of the Debtors or the Wind-Down Debtors, as applicable. On or prior to the Effective Date, as applicable, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors. The authorizations and approvals contemplated by this Article IV.E shall be effective notwithstanding any requirements under nonbankruptcy Law.

F.      *Indemnification Obligations.*

Consistent with applicable law, all indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall (1) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order, (2) remain intact, in full force and effect, and irrevocable, (3) not be limited, reduced or terminated after the Effective Date, and (4) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on or after the Petition Date. All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Wind-Down Debtors. Any Claim based on the Debtors' obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, for any reason, including by reason of section 502(e)(1)(B) of the Bankruptcy Code.

G.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers (whether from a Debtor to a Wind-Down Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Wind-Down Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including in connection with any Asset Sale), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

H.      *Director and Officer Liability Insurance.*

After the Effective Date, none of the Wind-Down Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein all Executory Contracts or Unexpired Leases will be deemed rejected by the applicable Wind-Down Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are identified on the Assumed Executory Contracts and Unexpired Leases Schedules; (2) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (3) is the subject of a motion to assume filed on or before the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any sale transaction pursuant to a Sale Order that is not the Confirmation Order; (5) are a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (6) is a D&O Liability Insurance Policy.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan or the Assumed Executory Contract and Unexpired Leases Schedule, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Wind-Down Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtors.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan conditions, restricts or prevents, or purports to condition, restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease or allows the counterparty thereto to terminate, recapture, impose any penalty, declare a default, condition a renewal or extension, or modify any term or condition upon any assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors and the Wind-Down Debtors reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedules at any time up to forty-five days after the Effective Date.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Wind-Down Debtors, the Estates, or their property without the need for any objection by the Wind-Down Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B.4 of the Plan and may

be objected to in accordance with the provisions of Article VIII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

C.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

No later than fourteen calendar days before the Voting Deadline, the Debtors shall serve notices of proposed assumptions to the counterparties to the agreements listed on the Assumed Executory Contracts and Unexpired Leases Schedules, which shall include a description of the procedures for resolving disputes related to the proposed assumption of applicable Executory Contracts and Unexpired Leases. In the event that any Executory Contract or Unexpired Lease is added to the Assumed Executory Contracts and Unexpired Leases Schedules after the provision of notices of proposed assumptions described above, a notice of proposed assumption with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof.

Unless otherwise agreed in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure amount must be Filed, served, and actually received by counsel to the Debtors no later than 14 days after Filing of the Assumed Executory Contracts and Unexpired Leases Schedule and service of the Cure Notice; *provided* that if any Executory Contract or Unexpired Lease is added to the Assumed Executory Contracts and Unexpired Leases Schedule after the Filing of the initial Assumed Executory Contracts and Unexpired Leases Schedules, or an Executory Contract or Unexpired Lease proposed to be assumed by the Debtors is proposed to be assigned to a third party after the Filing of the initial Assumed Executory Contracts and Unexpired Leases Schedules, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of (a) 14 days after service of the amended Assumed Executory Contracts and Unexpired Leases Schedules with such modification and (b) the date of the scheduled Confirmation Hearing or Sale Hearing, as applicable. The Debtors or the Wind-Down Debtors, as applicable, may reconcile and settle in the ordinary course of the Debtors' business any dispute (following a timely filed objection) regarding any Cure or any other matter pertaining to assumption without any further notice to or action, order, or approval of the Bankruptcy Court.

Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount (including any request for an additional or different cure amount) will be deemed to have assented to such assumption or Cure amount and any untimely request for an additional or different Cure amount shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Wind-Down Debtor, without the need for any objection by the Wind-Down Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtors or the Wind-Down Debtors, as applicable, shall pay the Cure amounts, if any, on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the parties to such Executory Contracts or Unexpired Leases may agree; *provided* that if a dispute regarding assumption or Cure is unresolved as of the Effective Date, then payment of the applicable Cure amount shall occur as soon as reasonably practicable after such dispute is resolved. Any Cure shall be deemed fully satisfied, released, and discharged upon payment of the Cure.

The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, in connection with any Asset Sale or otherwise shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

D.    *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan, in connection with any Asset Sale or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or Wind-Down

Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any nonbankruptcy law to the contrary, the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

E.      *Insurance Policies.*

        Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts hereunder. Unless otherwise provided in the Plan, on the Effective Date, in connection with the Asset Sale(s), the Debtors shall be deemed to have assumed or assumed and assigned to a Purchaser, solely to the extent set forth in the Asset Purchase Agreement(s), and explicitly provided in the Assumed Executory Contracts and Unexpired Leases Schedules, all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims; provided that any insurance policies that are not assumed and assigned to a Purchaser shall be assumed by the Debtors for the sole purpose of resolving any Claims covered by such insurance policies, resolving any Causes of Action retained in connection with such insurance policies, and collecting any and all outstanding deposits, restricted cash, and letters of credit related thereto to the extent reasonably necessary to implement the Wind-Down in accordance with the Plan.

        Nothing in this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or a Purchaser, solely to the extent assumed and assigned to a Purchaser under any Asset Purchase Agreement) or draw on any collateral or security therefor. For the avoidance of doubt, insurers and third party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

F.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

        Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

        Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.      *Reservation of Rights.*

        Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Wind-Down Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as applicable, shall have forty-five days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.     *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.     *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or Wind-Down Debtor in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the Wind-Down Debtors, as the case may be, and the Holder of the applicable Allowed Claim on the first Distribution Date, the Wind-Down Debtors shall make initial distributions under the Plan on account of Claims Allowed as of the Effective Date, subject to the Wind-Down Debtors' right to object to Claims; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of the Plan.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

B.     *Distribution Agent.*

All distributions under the Plan shall be made by the Distribution Agent.  The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Distribution Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Wind-Down Debtors.

C.     *Rights and Powers of the Distribution Agent.*

1.     Powers of the Distribution Agent.

The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

2.     Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Distribution Agent, in each case directly related to distributions under the Plan, shall be paid in Cash by the Wind-Down Debtors in the ordinary course of business.  In the event that the Wind-Down Debtors object to all or any portion of the

amounts requested to be reimbursed in a Distribution Agent's invoice, the Wind-Down Debtors and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Wind-Down Debtors and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.    Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Delivery of Distributions in General.

Except as otherwise provided herein, the Distribution Agent shall make distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Wind-Down Debtors.

3.    Minimum Distributions.

Notwithstanding any other provision of the Plan, neither the Wind-Down Debtors nor the Distribution Agent shall have any obligation to make distributions of Cash less than one hundred dollars ($100) in value, and each such Claim to which this limitation applies shall be settled and enjoined pursuant to this Article IX of the Plan and its Holder is forever barred pursuant to this Article IX of the Plan from ascertaining Claims against the Debtors, the Wind-Down Debtors, or their property.

4.    Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no further distribution to such Holder shall be made unless and until the Distribution Agent is notified in writing of the then-current address of such Holder, at which time all currently-due, missed distributions shall be made to such Holder as soon as reasonably practicable thereafter without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Wind-Down Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.

5.    Surrender of Canceled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Article IV.D hereof shall be deemed to have surrendered such certificate or instrument to the Distribution Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging

liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Reinstated under this Plan.

E.      *Manner of Payment.*

All distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Distribution Agent on behalf of the applicable Debtor or Wind-Down Debtor.

At the option of the Distribution Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

F.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Debtors, Wind-Down Debtors, Distribution Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the Wind-Down Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Distribution Agent an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8.

G.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Final Order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

I.      *Setoffs and Recoupment.*

Except as expressly provided in the DIP Order and this Plan, including pursuant to Article IX hereof, each Wind-Down Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Wind-Down Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Wind-Down Debtor(s) and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Wind-Down Debtor or its successor of any and all claims, rights, and Causes of Action that such Wind-Down Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Causes of Action of the Debtors or the

Wind-Down Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XIII.G hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.      *Claims Paid or Payable by Third Parties.*

      1.      <u>Claims Paid by Third Parties</u>.

The Debtors or Wind-Down Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Wind-Down Debtor. To the extent a Holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a party that is not a Debtor or a Wind-Down Debtor on account of such Claim, such Holder shall, within fourteen days of receipt thereof, repay or return the distribution to the applicable Wind-Down Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Wind-Down Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

      2.      <u>Claims Payable by Third Parties</u>.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

      3.      <u>Applicability of Insurance Policies</u>.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Causes of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## THE PLAN ADMINISTRATOR

A.      *The Plan Administrator.*

The rights, powers, privileges, obligations, and compensation of the Plan Administrator shall be set forth in the Plan Administrator Agreement, which shall be filed as part of the Plan Supplement.

B.      *Wind Down.*

On and after the Effective Date, the Plan Administrator will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court in accordance with the Wind-Down Budget, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates in accordance with the Wind-Down Budget.

As soon as practicable after the Effective Date, the Plan Administrator shall: (1) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Asset Purchase Agreement(s) and

any other documents contemplated thereby; (2) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (3) take such other actions in accordance with the Wind-Down Budget as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders, board of directors or managers, or Governing Body of any Wind-Down Debtor. From and after the Effective Date, except with respect to the Wind-Down Debtors as set forth herein, the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. Notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

The Debtors shall include in the Plan Supplement a Wind-Down Budget.

The Plan Administrator shall have the sole discretion, with the reasonable consent of the Credit Facility Lenders, to make a discretionary transition services payment to certain of the Debtors' employees in accordance with the Wind-Down Budget.

C.      *Tax Returns.*

From and after the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors reflecting all tax consequences relating to the activities of the Wind-Down Debtors as attributable to and for the account of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

D.      *Dissolution of the Wind-Down Debtors.*

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the filing of any documents with the secretary of state for the state in which the Wind-Down Debtors is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable state(s).

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING
## CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

This Article VIII shall not apply to the DIP Claims and the Credit Facility Adequate Protection Claims, which Claims shall be Allowed in full, without the need to file any Proofs of Claims against the Debtors, and will not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person or Entity.

A.      *Allowance of Claims.*

The Debtors and the Wind-Down Debtors, as applicable, shall have the exclusive authority to determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed.  Upon such determination, the Debtors or the Wind-Down Debtors, as applicable, may update the Claims Register to reflect such Proofs of Claim as Allowed and, upon delivery of the applicable treatment for such Unimpaired Claims under Article III.B (including, for the avoidance of doubt, Reinstatement), to mark such Proofs of Claims as satisfied.  The Debtors may determine to Reinstate a claim that would be an Unimpaired Claim under the Plan, even if no timely Proof of Claim is filed therefor.

B.      *Claims Administration Responsibilities.*

The Debtors and the Wind-Down Debtors shall have the exclusive authority to (1) File, withdraw, or litigate to judgment any objections to Claims, (2) settle or compromise any objections to Claims, including any informal objections, without further notice to or action, order, or approval of the Bankruptcy Court, and (3) administer and adjust the Claims Register to reflect such settlements or compromises without further notice to or action, order, or approval of the Bankruptcy Court.  Except as otherwise provided herein, from and after the Effective Date, each Wind-Down Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Claim or Interest (including any Disputed Claim or Interest), including the Causes of Action retained pursuant to Article IV.C of the Plan.

Any objections to Proofs of Claims (other than Administrative Claims) shall be served and Filed (a) on or before the date that is one hundred and eighty days following the later of (i) the Effective Date and (ii) the date that a Proof of Claim is Filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of a Claim or (b) such later date as ordered by the Bankruptcy Court.

C.      *Disputed Claims Process.*

If the Debtors or Wind-Down Debtors dispute any Proof of Claim that is Filed on account of an Unimpaired Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced; *provided* that the Debtors or Wind-Down Debtors, as applicable, or the Holder of such Claim may elect to have the validity or amount of any Claim adjudicated by the Bankruptcy Court instead.  If a Holder makes such an election, the Bankruptcy Court shall apply the law that would have governed the dispute if the Chapter 11 Cases had not been filed.

If the Debtors or Wind-Down Debtors, as applicable, dispute any Impaired Claim that is not Allowed as of the Effective Date pursuant to Article III.B or a Final Order entered by the Bankruptcy Court (which may include the Confirmation Order), the Debtors or Wind-Down Debtors, as applicable, may File an objection with the Bankruptcy Court, in which case such dispute shall be determined, resolved, or adjudicated before, the Bankruptcy Court.

D.      *Estimation of Claims and Interests*

Before, on, or after the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Wind-Down

Debtor may elect to pursue any supplemental proceedings to object to the allowance of, or any ultimate distribution on, such Claim or Interest.

E.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Wind-Down Debtors without the Wind-Down Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *Disallowance of Claims or Interests.*

Except as otherwise expressly set forth herein, and subject to the terms hereof, including Article IX, and the DIP Order, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Wind-Down Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed if:  (a) the Entity, on the one hand, and the Debtors or the Wind-Down Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**Except as otherwise provided herein or as agreed to by the Wind-Down Debtors, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

G.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

H.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distributions (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

I.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, including the DIP Order, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim

becomes an Allowed Claim.  DIP Claims shall accrue and be paid interest in accordance with the terms set forth in the DIP Credit Agreement.

## ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.   *Discharge of Claims and Termination of Interests.*

Pursuant to, and to the maximum extent provided by, section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to and after the Effective Date, and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (3) the Holder of such a Claim or Interest has accepted the Plan.  The Confirmation Order, if applicable, shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

B.   **Release of Liens.**

**Except as otherwise provided in the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind-Down Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder (including the DIP Agent or Credit Facility Agent)) shall be authorized and directed, at the sole cost and expense of the Wind-Down Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder (including the DIP Agent or Credit Facility Agent)), and to take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Wind-Down Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

**On the Effective Date, except as set forth in the Asset Purchase Agreement(s), the assets sold in such Asset Sale(s) shall be transferred to and vest in the Purchaser(s) free and clear of all Liens, Claims, charges,**

interests or other encumbrances pursuant to sections 363(f) and 1141(c) of the Bankruptcy Code and in accordance with the terms of the Sale Order (which may be the Confirmation Order), the Plan, and the Asset Purchase Agreement(s), as applicable.

C.      *Releases by the Debtors.*

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives (including any Plan Administrator that may be appointed), and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Wind-Down Debtors, their Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement, the DIP Facility, the DIP Documents, the Asset Purchase Agreement(s), the Credit Agreement, the pursuit of Confirmation and Consummation, the pursuit of the Asset Sale(s), the pre- and postpetition marketing and sale process, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (i) former directors and officers (excluding (A) those related to the Purchasers, and (B) those affiliated with, appointed by, or otherwise related to, the Sponsor, the Credit Facility Agent, or the Credit Facility Lenders) from claims or causes of action relating to or arising from payments made by or on behalf of any of the Debtors more than three years before the Petition Date; (ii) Claims and/or Causes of Action against the Former CEO and relating to the Former CEO Severance Payment; or (iii) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Wind-Down Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

D. *Releases by the Releasing Parties.*

Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the expeditious reorganization of the Debtors and implementation of the restructuring contemplated by the Plan, pursuant to section 1123(b) of the Bankruptcy Code, in each case except for Claims arising under, or preserved by, the Plan, to the fullest extent permissible under applicable Law, each Releasing Party (other than the Debtors or the Wind-Down Debtors), in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim, Cause of Action, directly or derivatively, by, through, for, or because of a Releasing Party, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Wind-Down Debtor, and each other Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates or their Affiliates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement, the DIP Facility, the DIP Documents, the Asset Purchase Agreement(s), the Credit Agreement, the pursuit of Confirmation and Consummation, the pursuit of the Asset Sale(s), the pre- and postpetition marketing and sale process, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth in the Plan. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (i) former directors and officers (excluding (A) those related to the Purchasers, and (B) those affiliated with, appointed by, or otherwise related to, the Sponsor, the Credit Facility Agent, or the Credit Facility Lenders) from claims or causes of action relating to or arising from payments made by or on behalf of any of the Debtors more than three years before the Petition Date; or (ii) Claims and/or Causes of Action against the Former CEO and relating to the Former CEO Severance Payment.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.

E. *Exculpation.*

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise

specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action or any claim arising from the Petition Date to the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable the Chapter 11 Cases, the Restructuring Support Agreement, the Disclosure Statement, the Plan (including the Plan Supplement), the DIP Documents, the Asset Purchase Agreement(s), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (excluding, for the avoidance of doubt, providing any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan), except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.  Notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

F.      *Injunction.*

Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

No Person or Entity may commence, continue, amend or pursue a Claim or Cause of Action or Covered Claim, as applicable, of any kind against the Debtors, the Wind-Down Debtors, the Exculpated Parties, the Released Parties, or Covered Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action or Covered Claim, as applicable, subject to Article IX.C, Article IX.D, and Article IX.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action or Covered Claim, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action or Covered Claim, as applicable, against any such Debtor, Wind-Down Debtor, Exculpated Party, Released Party, or Covered Party, as applicable.  At the hearing for

the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Wind-Down Debtor, Exculpated Party, Released Party, or Covered Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.

The Bankruptcy Court will have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

G.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind-Down Debtors, or another Entity with whom the Wind-Down Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Document Retention.*

On and after the Effective Date, the Wind-Down Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Wind-Down Debtors, so long as such alternation, amendment, modification, or supplement is not inconsistent with state law or regulations.

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE X.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.B hereof:

a.  the Bankruptcy Court shall have entered the Sale Order (which may be the Confirmation Order) and Confirmation Order, each as applicable, Filed in a manner consistent in all material respects with the Plan;

b.  the DIP Order shall have been entered by the Bankruptcy Court and shall remain in full force and effect;

c.  the Debtors shall not be in default under the DIP Facility or the DIP Order (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived by the DIP

Lenders or cured by the Debtors in a manner consistent with the DIP Documents or DIP Order) and there shall not have occurred and/or be continuing any event, act, or omission that, but for the expiration of time, would permit any DIP Lender to terminate the DIP Facility in accordance with its terms upon the expiration of such time and the DIP Credit Agreement shall be in full force and effect;

d.  the Debtors shall have paid in full in Cash (or the Debtors shall pay in full in Cash substantially contemporaneously with consummation of the Restructuring Transactions) all Restructuring Expenses incurred or estimated to be incurred, through the Effective Date;

e.  the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan. as applicable;

f.  the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan;

g.  all Professional Fee Amounts that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been funded into the Professional Fee Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court;

h.  the Restructuring Support Agreement shall remain in full force and effect;

i.  no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Plan;

j.  the Asset Purchase Agreement(s) shall have been executed and remain in full force and effect;

k.  the conditions to effectiveness to the Asset Purchase Agreement(s) shall have been duly satisfied or waived;

l.  if the Asset Sale(s) is approved under a Sale Order that is not the Confirmation Order, the Sale Order shall have been entered by the Bankruptcy Court and shall remain in full force and effect, and the Asset Sale(s) shall have been consummated;

m.  the following documents shall be in full force and effect substantially contemporaneous with the consummation of the Restructuring Transactions (including shall not be stayed, modified, revised, or vacated, or subject to any pending appeal), and shall not have been terminated prior to the Effective Date:  (a) any Sale Order; (b) such other motions, orders, agreements, and documentation necessary or desirable to consummate and document the transactions contemplated by this Plan; (c) to the extent not included in the foregoing, all financing documents needed to effectuate the Restructuring Transactions, and (d) all other material customary documents delivered in connection with transactions of this type (including any and all other documents implementing, achieving, contemplated by or relating to the Restructuring Transactions); and

n.  the Debtors shall have otherwise substantially consummated the applicable Restructuring Transactions in a manner consistent in all respects with the Restructuring Support Agreement and the Plan.

B.  *Waiver of Conditions.*

Except as otherwise specified in this Plan, any one or more of the conditions to Consummation (or any component thereof) set forth in this Article X may be waived by the Debtors with the prior written consent of the Credit Facility Agent and with the consent of the DIP Lenders, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.     *Effect of Failure of Conditions.*

If Consummation does not occur as to any Debtor, the Plan shall be null and void in all respects as to such Debtor and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any Holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

D.     *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.     *Modification and Amendments.*

Except as otherwise specifically provided in this Plan, and subject to the limitations and rights contained in the Restructuring Support Agreement, the Debtors reserve the right to modify the Plan, subject to the reasonable consent of the DIP Lenders, the Credit Facility Lenders, and the Sponsor (except with respect to modifications which adversely affect the DIP Lenders or the Credit Facility Lenders, which shall be subject to the DIP Lenders' and Credit Facility Lenders' consent), whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to (1) those restrictions on modifications set forth in the Plan, the Restructuring Support Agreement, and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors expressly reserve their right to revoke or withdraw, or to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan, and in all cases subject to the reasonable consent of the DIP Lenders, the Credit Facility Lenders, and the Sponsor (except with respect to any modifications, amendments, or alterations which adversely affect the DIP Lenders or the Credit Facility Lenders, which shall be subject to the DIP Lenders' and the Credit Facility Lenders' consent).

B.     *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.     *Revocation or Withdrawal of Plan.*

The Debtors, subject to the DIP Lenders' consent, reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

a. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

a. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

b. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Wind-Down Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

c. ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

d. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

e. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

f. enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

g. enter and enforce any order for the sale of property, including pursuant to any Asset Sale, pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

h. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

i. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

j. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

k.   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.J hereof;

l.   enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

m.   determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement, including the Restructuring Support Agreement;

n.   enter an order or final decree concluding or closing any of the Chapter 11 Cases;

o.   adjudicate any and all disputes arising from or relating to distributions under the Plan;

p.   consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

q.   determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

r.   hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

s.   hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

t.   hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article IX hereof;

u.   enforce all orders previously entered by the Bankruptcy Court; and

v.   hear any other matter not inconsistent with the Bankruptcy Code.

### ARTICLE XIII.
### MISCELLANEOUS PROVISIONS

A.   *Immediate Binding Effect.*

Subject to Article X.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests (a) are Impaired or Unimpaired, (b) have, or are deemed to have accepted the Plan, or (c) failed to vote to accept or reject the Plan),

All Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.     *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement.   The Debtors or the Wind-Down Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of Title 28 of the U.S. Code, shall be paid by each of the Wind-Down Debtors (or the Distribution Agent on behalf of each of the Wind-Down Debtors) in full on the Effective Date.   After the Effective Date, each Wind-Down Debtor (or the Distribution Agent on behalf of each of the Wind-Down Debtors) shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Wind-Down Debtors shall remain obligated to file post-confirmation quarterly reports and pay quarterly fees to the U.S. Trustee until the earlier of entry of a final decree closing such Chapter 11 Cases or an order of dismissal or conversion, whichever comes first. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to File a Proof of Claim or any other request for payment of quarterly fees.

D.     *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; *provided*, *however*, that the Committee will stay in existence solely for the purpose of filing and prosecuting fee applications and any pending appeal to which the Committee is a party.  The Wind-Down Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date, except for fees and expenses incurred by the Committee's professionals in connection with filing and prosecuting fee applications and any pending appeal to which the Committee is a party.

E.     *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.     *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.     *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| Center for Autism and Related Disorders, LLC<br>9089 S Pecos Rd., Suite 3600<br>Henderson, Nevada 89074<br>Attention:  Michelle Rapoport | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Christopher Greco and Allyson Smith<br>(cgreco@kirkland.com; allyson.smith@kirkland.com)<br><br>-and-<br><br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attention:  Claire E. Stephens and Gabriela Zamfir Hensley<br>(claire.stephens@kirkland.com; gabriela.hensley@kirkland.com)<br><br>-and-<br><br>Jackson Walker L.L.P.<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Attention:  Matthew D. Cavenaugh, Jennifer F. Wertz, J. Machir Stull, and Victoria N. Argeroplos (mcavenaugh@jw.com; jwertz@jw.com; mstull@jw.com; vargeroplos@jw.com) |
| United States Trustee | Counsel to the DIP Lenders and Credit Facility Lenders |
| Office of The United States Trustee<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002<br>Attention:  Jana Smith Whitworth, Casey Roy<br>(jana.whitworth@usdoj.gov;<br>casey.roy@usdoj.gov) | Latham & Watkins LLP<br>1271 Avenue of Americas<br>New York, NY 10020<br>Attention:  James Kstanes, Asif Attarwala, and Nacif Taousse<br>(james.ktsanes@lw.com; asif.attarwala@lw.com;<br>nacif.taousse@lw.com) |

After the Effective Date, the Wind-Down Debtors have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Wind-Down Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, the Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Plan Supplement.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.stretto.com/CARD or the Bankruptcy Court's website at http://ecf.txsb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or the Wind-Down Debtors' consent, as applicable; and (3) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, each of the Released Parties and Exculpated Parties will be deemed to have solicited votes on the Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, each of the Released Parties and Exculpated Parties and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, no such parties or individuals or the Wind-Down Debtors, the Released Parties, or the Exculpated Parties will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.      *Closing of Chapter 11 Cases.*

The Wind-Down Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the Restructuring Support Agreement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.      *Creditor Default*

An act or omission by a Holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Wind-Down Debtors may seek to

hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Wind-Down Debtors in remedying such default. Upon the finding of such a default by a creditor, the Bankruptcy Court may: (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Wind-Down Debtors in an amount, including interest, to compensate the Wind-Down Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

Dated: July 24, 2023

CENTER FOR AUTISM AND RELATED DISORDERS, LLC
on behalf of itself and all other Debtors

By:  /s/ *Steven Shenker*
Steven Shenker
Chief Restructuring Officer
CARD Holdings, LLC

## **Exhibit B**

**Proposed Notice of Confirmation Order and Effective Date**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CENTER FOR AUTISM AND RELATED | ) | Case No. 23-90709 (DRJ) |
| DISORDERS, LLC, *et al.*,[1] | ) |  |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No.** |

### NOTICE OF (I) ENTRY OF AN ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT AND CONFIRMING THE JOINT CHAPTER 11 PLAN OF CENTER FOR AUTISM AND RELATED DISORDERS, LLC AND ITS DEBTOR AFFILIATES AND (II) OCCURRENCE OF EFFECTIVE DATE

**PLEASE TAKE NOTICE** that on [___], 2023, the Honorable David R. Jones, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "Court"), entered the *Order Approving the Debtors' Disclosure Statement and Confirming the Joint Chapter 11 Plan of Center for Autism and Related Disorders, LLC and Its Debtor Affiliates and (II) Occurrence of Effective Date* [Docket No. [●]] (the "Confirmation Order") confirming the Plan[2] and approving the Disclosure Statement [Docket No. 17] of the above-captioned debtors (the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on **[_____], 2023**.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Order and the Plan are available for inspection. If you would like to obtain a copy of the Confirmation Order or the Plan, you may contact Stretto, Inc. the notice, claims, and solicitations agent retained by the Debtors in these Chapter 11 Cases, by: (a) calling the Debtors' restructuring hotline at +1 (855) 925-7872 (toll free) or +1 (949) 892-1668 (international); or (b) visiting the Debtors' restructuring website at: https://cases.stretto.com/CARD. You may also obtain copies of any pleadings Filed in these Chapter 11 Cases for a fee via PACER at: www.txs.uscourts.gov.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Center for Autism and Related Disorders, LLC (1512); CARD Holdings, LLC (1453); CARD Intermediate Holdings I, LLC (N/A); CARD Intermediate Holdings II, LLC (3953); and SKILLS Global, LLC (4192). The location of the Debtors' principal place of business is 9089 S Pecos Rd., Suite 3600, Henderson, Nevada 89074.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the *Joint Chapter 11 Plan of Center for Autism and Related Disorders, LLC and Its Debtor Affiliates* [Docket No. 16] (as modified, amended, and including all supplements, the "Plan").

**PLEASE TAKE FURTHER NOTICE** that the Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article IX of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Wind-Down Debtors, and any holder of a Claim or an Interest and such holder's respective successors and assigns, whether or not the Claim or the Interest of such holder is Impaired under the Plan, and whether or not such holder voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the Plan and the Confirmation Order in their entirety.

Houston, Texas
[_____], 2023

/s/ *DRAFT*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:           mcavenaugh@jw.com
                 jwertz@jw.com
                 mstull@jw.com
                 vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors-in-Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:           christopher.greco@kirkland.com
                 allyson.smith@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors-in-Possession*